In August 1947, the Board of Public Instruction of Alachua County filed its petition in the proper form alleging that the War Assets Administration was offering for sale certain lands in Clay County, known as the Crystal Lake Site, that petitioner was in need of said lands for educational purposes and was willing and able to purchase them, but being in doubt of its authority to do so, prayed the Court to determine by declaratory decree whether it had authority under the law to purchase said lands in aid of the public school program of Alachua County.
At final hearing the Court answered petitioner's prayer in the affirmative and determined that it might pay for said lands with public funds of the County. John M. Scott, Adolphe L. Vidal and C. D. Gunn, resident citizens and taxpayers of the County then filed their bill of complaint, seeking a review of the declaratory judgment so entered and prayed for an order restraining petitioners from expending public funds to purchase said lands. By stipulation the bill of complaint was *Page 492 
treated as a bill for intervention which was granted, an answer was filed and on final hearing the Chancellor decreed that defendant had authority to purchase the Crystal Lake Site, with public funds, even though it was located beyond the boundaries of Alachua County. This Appeal was prosecuted from the final decree.
The question for determination is whether or not the Board of Public Instruction of Alachua County is authorized to purchase and take title to lands outside the geographical limits of the county for the purpose of administering its public school program.
Appellants contend that this question should be answered in the negative. To support this contention they rely on certain provisions of Chapter 230, Florida Statutes 1941, particularly, sections 230.22 and 230.23, defining the powers and duties of Boards of Public Instruction. They also rely on First National Bank v. Board of Public Instruction, 93, Fla. 182, 111 So. 521, and Harvey v. Board of Public Instruction, 101 Fla. 273,133 So. 868. They contend that said statutes and decisions restrict the power of the Board of Public Instruction in the exercise of its school program to the county over which it exercises jurisdiction and that it is without authority to enter another county or to purchase lands beyond its borders for any purpose.
Prior to the enactment of Chapter 19,355, Acts of 1939, as amended by Chapter 23,726, Acts of 1947, hereafter referred to as the School Code, this contention might have been upheld, but as this Court pointed out in Taylor et al. v. Board of Public Instruction of LaFayette County, 157 Fla. 422,26 So.2d 180, the School Code "enlarged materially the scope of public school programs, public school plants, and public school activities." An adequate public school program is no longer limited to exploiting the three R's and acquiring such facilities as are necessary to do so. It contemplates the development of mental, manual and other skills that may not derive from academic training. It is predicated on the premise that a personality quotient is just as important as an intelligence quotient and that training the character and the emotions is *Page 493 
just as important as training the mind if the product is to be a well balanced citizen.
The purpose of the School Code was to make such a school program possible. Section 227.04 requires that it be liberally construed to effectuate this purpose. Section 230.03 imposes the organization and control of the public school system of the county on the County Board of Public Instruction. Section 227.17 provides that the State school system shall include health services, vocational rehabilitation and other special services that are essential to promote, improve and protect the adequacy and efficiency of the state system. It also makes the county school system a part of the state school system. Section 230.23, among other things, authorizes the County Board of Public Instruction to assume such responsibilities as may be vested in it by law, or as may be required by the State Board of Education or as in the opinion of the County Board of Public Instruction are necessary to provide for the more efficient operation of the County school system in carrying out the purposes of the School Code. As to property ownership, the latter section provides that the County Board of Public Instruction shall retain possession of all property to which title is not held by the County Board and to attain possession of and accept and hold under proper title all property which may at any time be acquired by the County Board for educational purposes in the County.
Appellants place peculiar emphasis on the words, "in the County" in the preceding paragraph. If these words were the sole guide to our conclusion, we might be constrained to agree with their contention, but when read with the other provisions of the School Code, referred to in the same paragraph, including the injunction imposed on us to construe it liberally, we are driven to the conclusion that an adequate school program as contemplated by the School Code cannot stand on such a limited interpretation. It is certain that Alachua County has no authority to interfere with the administration of the schools in Clay County, but if it needs lands in that county to effectuate its school program, we think it may acquire them for that purpose. Municipal Corporations of all classes are granted this power and we think the School Code *Page 494 
clearly contemplates that Boards of Public Instruction may exercise it if necessary to carry out the public school program. It is not at all clear that the legislature intended the words "in the county" to limit land purchase to lands in the county. It would be just as reasonable to conclude that the intent was to authorize the purchase of lands anywhere they might aid the county's school program.
The reason for purchasing the lands in question was to provide a camp and a recreational ground to aid the educational program of Alachua County. It was situated on a lake across the county line in Clay County but within easy reach of the schools of Alachua County. It is shown to be well adapted for that purpose and was being offered at a nominal price. Competitive sports are now a recognized part of the public school program. Eminent psychologists proclaim the doctrine that competitive sports contribute more to one's personality quotient and ability to work with people than any other school activity. Athletic coaches and physical directors tell us that the Olympic Games and other forms of physical competition have done more to put an end to class hatred and promote international harmony than the United Nations Assembly. The reason being that they are conducted by a strict moral code that insures just treatment to all who participate in them.
This is a mere incident to the manner in which the public school program has been bounced out of its traditional groove and invaded by new experiments in education. An adequate school program is now as diversified as an experimental farm program and the very purpose of the school code was to give sanction to such a program. The progenitors of the three R's would doubtless have "thrown a fit" if the school Board had talked about purchasing lands for a recreational center. The barn yard and the woodpile filled the need of a recreational center for them. It met the challenge of the time but its exponent, the three R's and the little red school house that symbolized it, now reposes in the museum of modern education. What we are concerned with is a system to cope with this machine age that we are in danger of becoming victims of if we do not become its masters. *Page 495 
We have learned that the public school program has a definite relation to the economy of our people, that the great majority of them must make their living with their hands and that those who do so must acquire different skills and trades from those who pursue the learned professions, various businesses and specialized activities. We have also learned that while skill in the three R's was adequate for a rural democracy when the nearest neighbor was three miles away and it was sometimes three hundred yards from the front door to the front gate, but that it is entirely inadequate for an urban democracy where you speak to your neighbor through the window and sometimes live with a flock of them under the same roof. A democracy in which we cultivate our farms with machines, travel by automobile, send our mail by air plane and flip a gadget to warm the house, start breakfast and relieve much of the day's drudgery. Such is the social era that the public school program must prepare the citizen for and the School Code was designed to provide the wherewith for such a program. County lines may be treated as a fiction rather than a barrier to such a program.
It follows that the question confronting us impels an affirmative answer. To construe the School Code otherwise would render it impossible to bring about a public school program adequate for the needs contemplated by the legislature. So the fact that the lands in question were without the geographical limits of Alachua County is not material if they are essential to carry out its public school program.
Affirmed.
THOMAS, C. J., CHAPMAN and SEBRING, JJ., concur.