Bess C. BOYD, Plaintiff-Garnisher, Appellant,

v.

Charles M. BOWMAN and Amelia Bowman, Defendants,

v.

UNITED STATES FIDELITY & GUARANTY COMPANY, Garnishee-Appellee.

No. 30365.

United States Court of Appeals, Fifth Circuit.

May 17, 1971.

---

Samuel Z. Goldman, Green & Hastings, Miami, Fla., for plaintiff-garnisher.

Raymond J. Dwyer, Edward A. Perse, Carey, Dwyer, Austin, Cole & Selwood, P. A., Miami, Fla., for garnishee-appellee.

Blackwell, Walker & Gray, Miami, Fla., for defendants.

Before JOHN R. BROWN, Chief Judge, and PHILLIPS * and INGRAHAM, Circuit Judges.

JOHN R. BROWN, Chief Judge:

Once again we are confronted with a perplexing question of State law that resists satisfactory resolution by this Court alone. At issue is the construction under Florida law of a Family Automobile Liability Insurance policy and the scope of its coverage. Existing State decisions cast little *Erie* light. Believing that here we are blessed with no greater prescience after absorbing *Erie*-Florida law than before, and following our oft-established practice [1] of declining to accept our own judicial hypotheses when State decisional certainty is within legitimate reach, we accordingly certify the question in the attached appendix to the Supreme Court of Florida for its authoritative resolution.

We could, of course, pre-guess the Florida courts and dispose of this controversy immediately, as we often have to do in diversity cases, by trying to divine what the State law will be though the markers are nonexistent or indistinct. But our duty is not merely to de-

---

* Of the Tenth Circuit, sitting by designation.

1. Martinez v. Rodriquez, 5 Cir., 1968, 394 F.2d 156, on certification, Fla., 1968, 215 So.2d 305, on receipt of answers to certification, 5 Cir., 1969, 410 F.2d 729; Life Ins. Co. of Va. v. Shifflet, 5 Cir., 1967, 370 F.2d 555, on certification, Fla., 1967, 201 So.2d 715, on receipt of answers to certification, 5 Cir., 1967, 380 F.2d 375; Hopkins v. Lockheed Aircraft Corp., 5 Cir., 1966, 358 F.2d 347, on certification, Fla., 1967, 201 So.2d 743, on receipt of answers to certification, 5 Cir., 1968, 394 F.2d 656; Green v. American Tobacco Co., 5 Cir., 1962, 304 F.2d 70, on rehearing, 304 F.2d 85, on certification, Fla., 1963, 154 So.2d 169, on receipt of answers to certification, 5 Cir., 1963, 325 F.2d 673, cert. denied, 1964, 377 U.S. 943, 84 S.Ct. 1349, 12 L.Ed.2d 306, on appeal after retrial, 391 F.2d 97, rehearing en banc denied, 1969, 409 F.2d 1166; Clay v. Sun Ins. Office, Ltd., 1960, 363 U.S. 207, 80 S. Ct. 1222, 4 L.Ed.2d 1170, on certification upon remand, Fla., 1961, 133 So.2d 735, on receipt of answers to certification, 5 Cir., 1963, 319 F.2d 505, reversed, 1964, 377 U.S. 179, 84 S.Ct. 1197, 12 L.Ed.2d 229. See W. S. Ranch Co. v. Kaiser Steel Corp., 10 Cir., 1968, 388 F.2d 257, 265 (dissenting opinion), reversed, 391 U.S. 593, 88 S.Ct. 1753, 20 L.Ed.2d 835.

cide cases, as though there is some virtue in the travail of a decision *now* which turns out a moment later to be wrong.[2] Our goal ought to be to decide them rationally and (we hope) correctly, so as to achieve results roughly paralleling those that would have been reached by the State courts had they heard the case.

The idea that there are State Courts and that they may, and sometimes must, be used has received much recent favor[3] —even in the field of federal constitutional claims on which the federal judiciary has the last say, if not the last word. To take full advantage of this remarkable Florida judicial tool is in keeping with this approach.

Following our preferred practice of having the parties participate directly in the preparation of the certified question and supporting statement,[4] counsel for the contestants have done an admirable job in formulating an agreed statement of the issue for decision. The answer will resolve the question finally and decisively, relieving us of the burden of camouflaging intuitive hunches about Florida law as more precedent-based pronouncements. When the uncertainty of the principles presented primarily involves state policy choices in the process of interpretation on our part, and when alternatives such as certification are available, we need not be content with *Erie* shots in the dark at the shifting and oft-times illusory target of State law as a basis for disposing of the controversy here and now.

Certificate from the United States Court of Appeals for the Fifth Circuit to the Supreme Court of Florida, pursuant to § 25.031, Florida Statutes 1959, and Rule 4.61, Florida Appellate Rules.

To the Supreme Court of Florida and the Honorable Justices thereof:

It appears to the United States Court of Appeals for the Fifth Circuit that the above-styled case in this Court involves a question or proposition of the law of the State of Florida which is determinative of the cause, and there appear to be no clear, controlling precedents in the decisions of the Supreme Court of Florida. The Court hereby certifies the following question of law to the Supreme Court of Florida for instructions concerning said question of law, based on the facts recited herein, pursuant to § 25.031, Florida Statutes 1959, F.S.A., and Rule 4.61, Florida Appellate Rules, as follows:

## A

### STATEMENT OF CASE AND FACTS

1. *Introduction*—The parties stipulate to the following statement of case and

2. See Agata, Delaney, Diversity, and Delay: Abstention or Abdication? 4 Hou.L.Rev. 422 (1966); Bednar, Abstention Under Delaney: A Current Appraisal, 49 Texas L.Rev. 247 (1971).

3. Younger v. Harris, 401 U.S. 37, 91 S.Ct. 747, 27 L.Ed.2d 669 [1971]; Boyle v. Landry, 401 U.S. 58, 91 S.Ct. 764, 27 L. Ed.2d 683 [1971]; Samuels v. Mackell, 401 U.S. 66, 91 S.Ct. 760, 27 L.Ed.2d 688 [1971]; Perez v. Ledesma, 401 U.S. 82, 91 S.Ct. 674, 27 L.Ed.2d 701 [1971]; Dyson v. Stein, 401 U.S. 200, 91 S.Ct. 769, 27 L.Ed.2d 781 [1971]; Byrne v. Karalexis, 401 U.S. 216, 91 S.Ct. 777, 27 L.Ed.2d 792 [1971]; Karp v. Collins, D.N.J., 1970, 310 F.Supp. 627, vacated Kugler v. Karp, 401 U.S. 930, 91 S.Ct. 933, 28 L.Ed.2d 210 [1971]; Buchanan v. Batchelor, N.D.Tex., 1970, 308 F.Supp. 729, vacated, sub nom. Wade v. Buchanan, 401 U.S. 989, 91 S.Ct. 1221, 28 L.Ed.2d 526 [1971]; Langston v. Byrne, D.Mass., 1970, 5 Cr.L. 2135, vacated sub nom. Byrne v. P.B.I.C., Inc., 401 U.S. 987, 91 S.Ct. 1222, 28 L.Ed.2d 526 [1971]; Garza v. Smith, W.D.Tex., 1970, 320 F.Supp. 131, vacated 401 U.S. 1006, 91 S.Ct. 1257, 28 L.Ed.2d 542 [1971]. Cf. Chief Justice Burger's dissenting opinion in Wisconsin v. Constantineau, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 [1971].

4. The certificate is deemed to include all of this opinion. For clarification we have made some slight changes in form but not in substance. Again we emphasize, as we did in *Martinez*, 394 F.2d at 159, n. 6 and *Hopkins*, 358 F.2d at 349, n. 2, that the phrasing of the question certified is in no way intended to rigidly circumscribe the Supreme Court's approach. See the last footnote, *infra*.

facts. The parties will alternately be referred to herein as they stand on appeal and as follows: plaintiff/garnishor/appellant, as Boyd; and garnishee/appellee/insurer, as U.S.F. & G. U.S.F. & G.'s alleged insureds, Charles M. Bowman and Amelia Bowman, will be referred to as Husband and Wife respectively.

2. *Statement of Case*—Boyd sued Husband and Wife in the the Dade County Circuit Court for personal injuries sustained in an automobile accident. That case was settled by entry of a stipulated judgment in favor of Boyd in the amount of $50,000.00. Wife's insurance carrier, Western Casualty & Surety Company, paid its policy limits of $10,-000.00 against the judgment, and Husband and Wife personally paid $1,500.00. Boyd then brought garnishment proceedings against Husband's carrier, U.S.F. & G., seeking $38,500.00. U.S.F. & G. caused the garnishment proceeding to be removed to the United States District Court for the Southern District of Florida on grounds of diversity and amount in controversy.

Boyd's petition to remand on the ground that the federal court had no jurisdiction of this proceeding was denied.

U.S.F. & G. answered the writ admitting issuance of the policy to Husband, but denying coverage for the subject accident, and denying that the stipulated judgment was binding on U.S.F. & G.

Pursuant to the trial court's order for pre-trial conference, the parties filed a pre-trial stipulation agreeing that "there are no disputed issues of fact" and that the "case can be resolved by the court without trial on purely legal issues." A stipulation of facts was also filed.

After some intermediate skirmishing, the trial court, 313 F.Supp. 579, granted the summary final judgment appealed in favor of U.S.F. & G. The subject appeal followed in due course.

3. *Statement of Facts*—Boyd was a pedestrian when struck by a Pontiac automobile owned by Wife and operated by Husband. Boyd sued Husband and Wife in the Dade County Circuit Court, and they were defended by Western Casualty and Surety Company, the insurer of Wife's car. Husband was the owner of a Ford automobile, which was not involved in this accident, which Ford was insured by U.S.F. & G. U.S.F. & G. denied coverage for the accident and refused to participate in the defense of the Boyd personal injury action. Thereafter, that case was settled by agreement between the parties to said lawsuit, and their respective attorneys, by entry of a Final Judgment in the sum of $50,000.00. Payment on said judgment was made by Western Casualty in the sum of $10,-000.00, its full coverage; and personal payment was made by the Husband and Wife in the sum of $1,500.00. Thereafter, Boyd filed her garnishment directed to Husband's insurer, U.S.F. & G., seeking payment of the unpaid portion of the judgment from his policy.

Prior to her marriage to Husband, Wife's name was Amelia Melvin, and she was the owner of an automobile upon which an automobile liability insurance policy was written with the Western Casualty and Surety Company. Husband and Wife were married on June 25, 1966, and since that time have resided together in the same household.

At the time of the marriage, Husband was the owner of a 1965 Ford, which he had purchased new in July, 1965, and upon which an automobile liability insurance policy was written by U.S.F. & G.

After the marriage, Husband continued ownership and use of his vehicle, and the insurance coverage continued with U.S.F. & G., with him as the named insured, including a renewal policy commencing July 1, 1967; and Wife continued ownership and use of her vehicle, and the insurance coverage continued with Western Casualty, with her as the named insured.

On September 30, 1966, Wife traded in her automobile on the purchase of a new 1967 Pontiac automobile which was titled in her married name, and the in-

surance continued with Western Casualty, and her use continued as before.

The automobile liability insurance on Wife's Pontiac was renewed by Western Casualty thereafter for the period of March 1, 1967 to March 1, 1968, under which policy she remained named insured, and which policy included her "spouse" as an insured. This policy had bodily injury liability coverage with limits of $10,000.00 for each person, and $20,000.00 for each occurrence.

Husband's insurer, U.S.F. & G., renewed the coverage on his Ford automobile for the period of July 1, 1967 to July 1, 1968, and issued to him its Family Automobile Policy, under which policy Husband was the named insured, and which policy also provided coverage when Husband operated a "non-owned" automobile. This policy had bodily injury liability coverage with limits of $50,000.00 for each person, and $100,-000.00 for each occurrence.

In January, 1968, Husband and Wife decided to vacation in Florida. Their respective automobiles were operable, and they chose to drive from their home in Indiana to Florida in Wife's Pontiac. At the time of the collision with Boyd, Husband was driving wife's car, and Wife was a passenger.

Husband and Wife reported the accident to Wife's insurance agent, since her automobile was the one involved in the accident. Husband did not report the matter to his insurer, U.S.F. & G., until he was served with a summons and complaint in the lawsuit filed by Boyd in the Circuit Court of Dade County, Florida, which pleadings he received by registered mail on September 23, 1968. They notified Western Casualty's agent of the suit, and Husband immediately reported the matter to Darrel Johnson, U.S.F. & G.'s agent in Albion, Indiana, in person, and requested U.S.F. & G. to participate in the defense of the suit.

Wife's insurer, Western Casualty, entered an appearance in said suit on behalf of Husband and Wife, and defended them in said lawsuit. U.S.F. & G. neither appeared nor participated in the defense of the lawsuit, but took the position that its policy did not afford coverage to Husband when Husband was operating a vehicle titled in the name of his Wife, who resided with him, when such automobile was insured with another company.

Thereafter, Husband was notified that the suit had been set for trial in the two-week period commencing April 28, 1969, and Western Casualty's attorneys contacted Husband and Wife with regard to settlement discussions that had been commenced between them and the plaintiff's attorneys.

As the demand for settlement was in excess of the $10,000.00 coverage afforded under the Western Casualty policy, Husband and Wife retained Attorney William F. McNagney, Fort Wayne, Indiana, to represent their personal interests in this litigation. Mr. McNagney thereupon contacted Mr. Darrel Johnson, who again checked with U.S.F. & G., and Johnson again confirmed denial of coverage. Mr. McNagney then sent U.S.F. & G. a letter dated May 6, 1969, and obtained thereon said insurer's written agreement of the denial of coverage, which denial was also incorporated in U.S.F. & G.'s reply letter of May 7, 1969.

With regard to these letters, Adjuster Robert E. Campbell had the authority to sign said letters; his signing said letters was within the scope and course of his employment; and his signing said letters was with the consent and approval of U.S.F. & G.

Thereafter, negotiations for settlement continued between the attorneys for the plaintiff, the attorneys for Western Casualty, and Husband and Wife's personal attorney, McNagney, which culminated in a settlement in the sum of $50,000.00, and a judgment being entered therefor. Payment toward this judgment was made by Western Casualty by payment of its full coverage of $10,000.00; and a personal payment was made by Husband and Wife in the sum of $1,500.00.

The pertinent portions of Husband's U.S.F. & G. policy are set out below:

## "PART I—LIABILITY

"Coverage A—Bodily Injury Liability;

"Coverage B—Property Damage Liability

To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of:

A. bodily injury * * * sustained by any person;

    *   *   *   *   *   *

arising out of the ownership, maintenance or use of the owned automobile or any non-owned automobile * *

    *   *   *   *   *   *

Persons Insured

The following are Insureds under Part I:

(a) with respect to the owned automobile,

(1) the Named Insured and any resident of the same household,

(2) any other person using such automobile with the permission of the Named Insured. * * *

    *   *   *   *   *   *

(b) with respect to a non-owned automobile,

(1) the Named Insured,

(2) any relative * * *, provided his actual operation * * * is with the permission * * * of the owner.

    *   *   *   *   *   *

Definitions

Under Part I:

'Named Insured' means the individual named in Item 1 of the declarations and also includes his spouse, if a resident of the same household;

'Insured' means a person * * * described under 'Persons Insured';

'relative' means a relative of the Named Insured who is a resident of the same household;

'owned automobile' means

(a) a private passenger * * * automobile described in this policy for which a specific premium charge indicates that coverage is afforded.

    *   *   *   *   *   *

(c) a private passenger * * * automobile ownership of which is acquired by the Named Insured during the policy period, provided

(1) it replaces an owned automobile as defined in (a) above, or

(2) the Company insures all private passenger * * * automobiles owned by the Named Insured on the date of such acquisition and the Named Insured notifies the Company during the policy period or within 30 days after the date of such acquisition of his election to make this and no other policy issued by the Company applicable to such automobile, or

    *   *   *   *   *   *

(d) a temporary substitute automobile;

'temporary substitute automobile' means any automobile or trailer, not owned by the Named Insured, while temporarily used with the permission of the owner as a substitute for the owned automobile or trailer when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction;

'non-owned automobile' means an automobile or trailer, not owned by or furnished for the regular use of either the Named Insured or any relative, other than a temporary substitute automobile."

    *   *   *   *   *   *

The sole basis of the court's "no-coverage" finding was that the "non-owned" provision excludes vehicles owned by the named insured and that Wife was a named insured under the policy; and this was bottomed upon "the intent of the parties" to exclude coverage for those vehicles not specifically listed in the policy, but which were "owned and

regularly used by members of the family."

QUESTION TO BE CERTIFIED

The parties agree that the following question is certified to the Supreme Court of Florida for decision:

> Whether, under the Law of Florida, the subject family automobile insurance policy provides or excludes liability coverage for the specifically named insured husband while he is operating an unscheduled automobile owned by his resident-in-household spouse and insured by another carrier for a lesser amount.[5]

The entire record in this case, together with copies of the briefs of the parties in this Court, are transmitted herewith.

---

5. "The particular phrasing used in the certified question is not to restrict the Supreme Court's consideration of the problems involved and the issues as the Supreme Court perceives them to be in its analysis of the record certified in this case. This latitude extends to the Supreme Court's restatement of the issue or issues and the manner in which the answers are to be given, whether as a comprehensive whole or in subordinate or even contingent parts." Martinez v. Rodriquez, 394 F.2d at 159, n. 6.