**NATIONAL EDUCATION ASSOCIATION, Inc. et al., Plaintiffs-Appellees,**

v.

**LEE COUNTY BOARD OF PUBLIC INSTRUCTION et al., Defendants-Appellants.**

**No. 28195.**

United States Court of Appeals, Fifth Circuit.

Sept. 16, 1971.

Julian D. Clarkson, Emmet B. Anderson, Fort Myers, Fla., for defendants-appellants.

Richard H. Frank, Tampa, Fla., Glassie, Pewett, Beebe & Shanks, Robert H. Chanin, Hershel Shanks, Allan I. Mendelsohn, Washington, D. C., for plaintiffs-appellees.

Before JOHN R. BROWN, Chief Judge, and COLEMAN and CLARK, Circuit Judges.

PER CURIAM:

The question in this case, broadly stated, is whether the School Board of Lee County, Florida and the administrators of the school system have the authority under Florida statutes to condition return of teachers to a previous non-strike status by the payment of $100. The District Court, 299 F.Supp. 834, granted summary judgment for the teachers and the School Board appeals.

The suit successfully maintained was on the broad, appealing constitutional claim that conditioning employment was a denial of constitutional rights. See 42 U.S.C.A. §§ 1981, 1983; 28 U.S.C.A. §§ 1331, 1343(3), (4). As we are convinced that most, if not all, of the case will wash out on State issues, making it unnecessary (and hence constitutionally unwise) to explore, reach or decide the

ephemeral constitutional issues, this is a classic case for certification to the Supreme Court of Florida. On its resolution of the State issues we will determine what—if any—remains of the Federal constitutional claims.

Following "our experience-born practice we requested that the parties submit a proposed agreed certificate of the issue or issues for decision." Allen v. Estate of Carman, 5 Cir., 1971, 446 F.2d 1276; Boyd v. Bowman, 5 Cir., 1971, 443 F.2d 848, 850. This they have done. Except for some rearrangement and slight elaboration, the certificate below tracks or is a paraphrase of the agreed proposal.

CERTIFICATE FROM THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT TO THE SUPREME COURT OF FLORIDA, PURSUANT TO SECTION 25.031, FLORIDA STATUTES 1967, AND RULE 4.61, FLORIDA APPELLATE RULES.

To the Supreme Court of Florida and the Honorable Justices thereof:

It appears to the United States Court of Appeals for the Fifth Circuit that the above styled case in this Court involves a question or proposition of the law of the State of Florida which is [1] determi-native of the cause, and there appear to be no clear, controlling precedents in the decisions of the Supreme Court of Florida.

This Court hereby certifies the following question of law to the Supreme Court of Florida for instructions concerning said question of law, based on the facts recited herein, pursuant to Section 25.031, Florida Statutes 1967, F.S.A., and Rule 4.61 Florida Appellate Rules, 32 F.S.A. as follows:

(1) Style of the Case

The style of the case in which this certificate is made is Lee County Board of Public Instruction, et al, appellants, versus National Education Association, Inc., et al., appellees, Case No. 28195, United States Court of Appeals for the Fifth Circuit, such case being an appeal from the United States District Court for the Middle District of Florida.

(2) Statement of Facts

This suit contests the legality of certain $100 fines paid by approximately 400 public school teachers in Lee County, Florida, following the educational crisis that gripped the entire state in February and March, 1968. The suit has been brought as a class action under Rule 23, F.R.Civ.P.[2]

---

1. Plaintiffs contend that the word "is" should be "may be": If the Florida Supreme Court decides that the teachers' return at their former status may, under Florida law, properly be conditioned on the $100.00 payment, then the Florida Supreme Court determination would not be determinative of the cause since either this Court or the District Court on remand may well find that nevertheless the federal constitution is violated. For this reason, plaintiffs believe the case does not comply with the requirements of F.S.A. § 25.031. Moreover, certification under F.S.A. § 25.031 would also violate the United States Supreme Court's injunction against federal court abstention, except in limited circumstances not present here. See McNeese v. Board of Education, 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963); Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); Harman v. Forssenius, 380 U.S. 528, 85 S.Ct. 1177, 14 L.Ed.2d 50 (1963); Zwickler v. Koota, 389 U.S.

241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967). Recognizing, as indicated in the Clerk's letter, that the Court has "determined" to certify the case to the Florida Supreme Court, plaintiffs hesitate to urge these points at greater length to the panel. However, should the Court wish, plaintiffs would welcome the opportunity to brief the point in greater detail and to present oral argument.

As a footnote to this footnote the Court would repeat what we said recently in Boyd v. Bowman, 5 Cir., 1971, 443 F.2d 848: "The idea that there are State Courts and that they may, and sometimes must, be used has received much recent favor [citing Younger v. Harris, 1971, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 and companion cases]—even in the field of federal constitutional claims on which the federal judiciary has the last say, if not the last word." [p. 850.]

2. On September 30, 1968, the District Court ruled, pursuant to Rules 23(c)(1),

There are three categories of plaintiffs. The first category, of whom seven are named as plaintiffs, is made up of teachers who actually paid the $100 fines. These teachers seek to recover the fines they paid on the ground that they constitute illegal exactions. There are approximately 400 Lee County teachers in this category. The second category of plaintiffs, of whom two are named plaintiffs, consists of teachers who refused to pay the fine and who were therefore denied permission to return to the classroom after the crisis. These teachers seek a judgment for lost wages and for reinstatement to their former positions. Finally, two teacher organizations have also joined as plaintiffs in this action. They are the National Education Association and the Florida Education Association.

The defendants are the Lee County Board of Public Instruction, the individual members thereof, and the Lee County Superintendent of Schools.

The case came before the District Court on cross motions for summary judgment filed by all parties. The background facts and the major evidentiary facts regarding the contested payments are not in dispute. Certain details are in dispute and, as to these, the question is whether or not they are material. The Court found that they were not material and that even assuming the accuracy of defendants' version, plaintiffs' motion for summary judgment must be granted.

This dispute grew out of the public school crisis which threatened to close Florida's schools in February and March, 1968. In February, 1968, Governor Kirk convened an extraordinary session of the Florida legislature. This session was necessitated by the fact that he had vetoed the educational appropriations act passed by the regular session and the legislature had adjourned without passing a substitute education bill.

On February 16, 1968, the extraordinary session passed a new education bill and promptly adjourned. The Government threatened to veto this bill as well. As a consequence, thousands of teachers in Lee County prepared over the weekend of February 17–18, 1968, to submit already signed resignations, thus presaging a work stoppage on Monday, February 19.

On Monday morning, the Lee County teachers who had signed resignations did not report for work. The Lee County School Board promptly filed an injunction suit against the teachers in the appropriate state court, based on F.S.A. § 839.221 which prohibits strikes by governmental employees.

At a meeting of the School Board held on Tuesday morning, February 20, 1968, an attempt was made to present to the School Board the resignations which the teachers had signed. According to the official minutes of the School Board, however, "the box of papers (containing the resignations) was ignored."

On Wednesday, February 21, 1968, 441 Lee County teachers and principals personally presented their resignations at the Office of the Superintendent of Schools. Later that day, the Twelfth Judicial Circuit Court in Lee County issued a temporary restraining order enjoining the teachers from striking. The order added that "Nothing in this Order, however, shall effect or prevent a Defendant from effecting a lawful resignation." Though over 400 teachers remained away from the classroom, no contempt proceedings were brought to determine whether or not the teachers who had submitted their resignations were in violation of the restraining order.[3]

At a meeting on February 28, the teachers still not having returned to the classroom, the Board voted to accept all unrevoked resignations as of 4:00 p. m., March 1, 1968. At 5:00 p. m. on that

that the plaintiffs are entitled to maintain the case as a class action under Rule 23(b) (1) and 23(b) (2).

3. The restraining order never ripened into a permanent injunction and its only relevance here is as background.

date, 425 teachers had submitted unrevoked resignations and their resignations were accordingly accepted.

The matter continued in this posture until March 8, 1968. At this time, it became clear that the Governor was not going to carry out his threat to veto the legislation passed by the extraordinary session of the Legislature, but was instead going to permit it to become law without his signature. The Florida Education Association promptly announced that, having accomplished all that could be done at that time, the teachers should return to the classroom, provided that there were no reprisals and that they were not reduced in status.

As of March 8, 1968, the resigned teachers and principals of Lee County were prepared to return to the classroom at their status prior to the work stoppage. Several prominent, public-spirited citizens offered to mediate between the School Board and the teachers in order to provide some means of communication between the opposing sides. By March 15 a proposal to get the teachers back into the classroom had been worked out under the auspices of these private citizens. The proposal on that date was presented to a meeting of the resigned teachers and to the School Board, and a majority of both groups voted in favor of the proposal.

One of the provisions of the proposal, Paragraph 5, stated that all teachers "would be reemployed on the same basis as if his resignation had never been submitted or received by the Lee County School Board, provided that any such teachers shall forfeit a fine of $100.00." The payment was frequently referred to in School Board minutes as a fine and the newspapers also referred to it as a fine. Approximately 400 teachers paid the $100 fine and returned to the classrooms. Others, like plaintiffs Acquisto and Steele, refused to pay the fine and were not permitted to return.

The matters that divided the School Board and the teachers after March 8 (when the citizens began their attempt to mediate a settlement) clearly emerge from the affidavits regarding the negotiations and from other documentary evidence in the record. The teachers were willing to return to their old status. The Board also wanted the teachers back, but only in the status of new teachers, with the attendant reduction in salary and loss of tenure and other benefits that this status would entail.

Defendants concede that on March 8 the teachers had effectively resigned and accordingly were legally free to refuse to return to the classroom. The first proposal which was put forward by the citizens who were conducting the negotiations provided that the resigned teachers "shall be employed on the same basis as a new teacher. Any teacher so employed will be entitled to reemployment beginning with the school year 1968–1969 on the same pay, benefit and tenure basis as if his resignation had never been submitted or received by the Lee County School Board." In other words, this early proposal suggested that the resigned teachers would be reinstated as new teachers for the remainder of the 1967–1968 school year and that those of them who were allowed to come back for the 1968–1969 school year would be restored to their former status. At a meeting of the teachers on March 14, 1968, they made it clear that this proposal, which would change their contractual status to that of new teachers for the remainder of the year, would not be acceptable.

According to the defendants' affidavits, the citizen mediators, Judge Archie M. Odom and Attorney John W. Shepherd suggested that the teachers be taken back in their status prior to the resignations, but that each teacher make a $100 payment to the Board. However —still according to the defendants' affidavits—the small group of teachers with whom the citizens were negotiating wanted the $100 payment to be denominated as a fine. Although the plaintiffs contest this version of the facts, they accept it for purposes of their motion for summary judgment.

On the following day, March 15, a proposal providing that resigned teachers would be permitted to return at their prior status provided each forfeit a $100 fine was presented to a meeting of the resigned teachers and to a meeting of the School Board. The teachers met first and voted to accept the proposal, although some teachers voted against it because they felt that they had done nothing wrong and should not be required to pay a fine. At the School Board meeting, the Board was advised that the teachers had accepted the proposal. The Superintendent of Schools recommended that the paragraph relating to the fine be deleted and that the original proposal, by which the teachers would return as new teachers for the remainder of the year be substituted in its place. The Chairman of the School Board asked one of the teacher leaders who was present what he thought the teachers would think of the change. The teacher leader then replied that the teachers had voted on the proposal as a whole and that if the Board changed the proposal, it would have to be resubmitted to the teachers. The Board then accepted the proposal as submitted.[4]

Judge Krentzman found that the School Board wanted to punish the teachers for what it believed to be the teachers' wrongdoing. Judge Krentzman concluded that the $100 payments were fines. The defendants challenge this conclusion.[5]

(3) Question of Law to be Answered

Under the facts as stated was the School Board authorized by § 230.22(5),[6] Florida Statutes 1967, or any other section of the Florida School Code or implementing regulation to condition the return of the teachers to their prior status on the $100 payment described above?

This Court expressly reserves the federal questions of constitutional law. See England v. Louisiana State Board of Medical Examiners, 1964, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440. In so doing, it does not intend to prevent, the Supreme Court of Florida from relying upon, articulating or expressing its reasons in terms of constitutional principles in arriving at decisions on the state questions. To afford the widest possible latitude in reaching decision, we emphasize that the particular phrasing used in the certified question is not to restrict the Supreme Court's consideration of the problems involved and the issues as the Supreme Court perceives them to be in its analysis of the record certified in this case. This latitude extends to the Supreme Court's restatement of the issue or issues and the manner in which the answers are to be given, whether as a comprehensive whole or in subordinate or even contingent parts.

The entire record in this case, together with copies of the briefs of the parties in this Court, is transmitted herewith.

---

4. The Board did add one additional paragraph to the proposal as submitted relating to the withdrawal of so-called sanctions, which, however, is irrelevant for the present purpose.

5. Defendants believe that this paragraph should not be included in the certification.

6. *Perform Duties and Exercise Responsibility.*—The county board may perform those duties and exercise those responsibilities which are assigned to it by law or by regulations of the state board and, in addition thereto, those which it may find to be necessary for the improvement of the county school system in carrying out the purposes and objectives of the school code.
F.S.A. § 230.22(5).