260 So.2d 206 (1972)
NATIONAL EDUCATION ASSOCIATION, Inc., et al., Plaintiffs-Appellees,
v.
LEE COUNTY BOARD OF PUBLIC INSTRUCTION et al., Defendants-Appellants.
No. 41561.
Supreme Court of Florida.
March 15, 1972.
Rehearing Denied April 27, 1972.
Richard H. Frank, Tampa, for plaintiffs-appellees.
Julian D. Clarkson and Emmet B. Anderson, Fort Myers, for defendants-appellants.
DEKLE, Justice.
The United States Court of Appeals for the Fifth Circuit, 448 F.2d 451, in its cause on appeal from the United States District Court, Middle District of Florida, 299 F. Supp. 834, has (in the continuing good relationship which is reflected by such certified questions on State issues) certified to us the following question of law based upon recited facts, pursuant to Fla. Stat. § 25.031 F.S.A., and Rule 4.61 F.A.R., 32 F.S.A.:
Under the facts as stated was the Lee County Board of Public Instruction authorized by Fla. Stat. § 230.22(5), or any other section of the Florida School Code or implementing regulation, to condition the return of resigned teachers to their *207 status prior to a teacher work stoppage, upon payment by each teacher of $100 to the School Board?
This litigation is an aftermath of a well-publicized period of teacher "strikes" over the State of Florida in February 1968. Included in the turmoil were 400 Lee County (Ft. Myers) school teachers who participated in a state-wide teacher "work stoppage." A temporary restraining order was obtained by the School Board enjoining the teachers from striking but recognizing their right to effect lawful resignations. The teachers thereupon submitted such resignations in writing and after a proper waiting period these were accepted by the Board. Ultimately, the teachers were advised by their state organization to return to the classrooms provided they did not suffer any reprisals or reductions in status. It was after negotiations through citizen mediators that both the teacher group and the School Board voted to accept a proposal whereby all teachers would be permitted to return to their former positions, provided that each pay the School Board $100.
U.S. District Judge Krentzman concluded that the payments were "fines" for leaving their positions and as such violated the due process clause of the 14th Amendment to the U.S. Constitution (the determination of which is of course reserved for any determination by the Court of Appeals). Judge Krentzman also held that such payment would violate state law. It is upon this proposition that the Court of Appeals makes its certification for opinion as a question of law which may be determinative of the cause and "on which there appear to be no clear, controlling precedents in the decisions of the Supreme Court of Florida," as provided in the statute.
Our review of the facts under Florida law leads us to the conclusion that the certified question should be and is answered in the affirmative, i.e., that payment of the $100 was authorized as liquidated damages under Fla. Stat. § 230.22 (5), F.S.A.[1]
This was in reality an agreement between the Board and plaintiffs-teachers to do what was done. The quarrel seems to be with labels given to their actions. No good reason appears why there could not be such an agreement, inasmuch as teachers and the Board may within legal limits have agreements on employment with terms as they may fix.
The agreement was generally recognized as an acceptable solution to both sides after extensive negotiations between them in order to arrive at a solution which would end a stalemate then existing. These teachers had submitted written resignations which were accepted effective March 1, 1968; yet they desired after the difficulty at that time had subsided, to return to their former positions in continuing seniority and standing rather than as new teachers. The Board did not really object to this, apparently, but was in the position of having to follow the statute[2] and also having sustained alleged damages because of the closing of the schools and the additional expenses due to the resignations of the teachers. The teachers' action created a dilemma: It rendered the teachers ineligible for employment with tenure after the effective date of March 1 under the Florida School Code,[3] so that *208 there was no existing legal method by which the departed teachers could be reemployed except as new teachers (a condition clearly unacceptable to their state association). This action of the teachers also invoked the School Board's constitutional duty to recover from the teachers any monetary loss occasioned by the teacher walkout. Article XII, Sections 9 and 13, of the Constitution of 1885, then in force, forbade expenditure of school funds for any purpose other than the support and maintenance of public free schools.[4] For the School Board to have forgone collection of damages which it sustained because of the walkout would have been tantamount to subsidizing teacher lobbying and political activity.[5] It seems to us a strange and ironclad system of administration and of law which does not allow a reasonable latitude to "reopen" a gate which has of necessity been closed  yet not locked. The law looks to just results and reasonable conclusions. Such a conclusion was sought by an emergency regulation adopted by the State Board of Education of Florida, providing in part:
"During a period of emergency as defined in Section 236.0711, Florida Statutes, the state superintendent of public instruction is authorized to waive such rules and regulations as he may consider necessary. .. ."[6]
Pursuant thereto the state superintendent waived the provisions of Section 130-1.76, State Board of Education regulations,[7] the effect of which was to permit county boards to grant personal leave retroactively so that teachers participating in the walkout could return to their jobs with no loss of tenure.
This was fine as to the walkout. The Lee County teachers, however, had resigned and their resignations had been accepted, so that they were no longer employed teachers who could be granted leave, even retroactively. Their situation called for a further solution. One was found in the aforesaid agreement for the teachers to return with status and a corresponding compliance with Florida constitutional requirements[8] by payment to cover any damages. This took into consideration both sides of the problem in reaching a fair result which placed the school system in the State of Florida back into operation and at the same time protected the interest of teachers who manifested the same concern. In a sense, the School Board, in the exercise of its broad discretionary powers conferred by law, took about as much "Kentucky windage" in taking the teachers back with tenure as it did in letting them pay for the results of their actions.
The Board's action is supported by In Re Board of Public Instruction of Alachua County, 160 Fla. 490, 35 So.2d 579 (1948). This Court also commented favorably upon such efforts of school authorities to maintain the educational program during extreme circumstances in the case of Board of Public Instruction v. State ex rel. Taylor, 156 Fla. 708, 24 So.2d 99 (1945), which provided for transporting students to schools in other districts temporarily because of the unavailability of competent teachers, saying:
"We cannot resist remarking that, in the situation facing them, the course pursued *209 by the Board of Public Instruction was entirely practical, even if technically irregular. If, as was shown by undisputed testimony, no teachers could be obtained, or at least no competent ones, it was much better that the pupils be transported to schools in other districts than that their training be allowed to suffer for the period that the condition existed. We can but wonder what better the superintendent and the members of the Board of Public Instruction could have done... ." [p. 103]
Harvey v. Board of Public Instruction, 101 Fla. 273, 133 So. 868 (Fla. 1931) is cited as precluding such payment and making it a violation of state law. In a situation where the Board of Public Instruction's authority is doubtful, Harvey holds that the doubt must be resolved against the Board. In effect, that decision limited the powers of the Board. Subsequently, however, a new Act, Ch. 19,355, Acts of 1939, greatly enlarged the scope of the public school programs, activities and facilities. It was designed to provide a more comprehensive public educational system for the people of Florida. In re Board of Public Instruction of Alachua County, supra, thoroughly analyzes the code's purpose. In that opinion we held, with reference to a Board of Public Instruction's authority, that 1931 Harvey did not apply due to the 1939 code and its intent to expand educational horizons. Consequently, the court in Alachua followed the spirit and purpose of the 1939 School code and refused to limit the powers of the Board where its authority was unclear. In light of the 1939 School code, subsequent legislative changes thereto and the Alachua decision, Harvey is not controlling here.
Teachers place great emphasis upon the word "fine" which was employed in the agreement. The fact that the language of the agreement used the words "that any such teacher shall forfeit a fine of $100" does not in itself control or determine the legal effect of the payment merely because it is labeled a "fine." Just because the cat has her kittens in the oven does not make them biscuits. It is understandable that some teachers would have sensitive feelings on the subject and its effect upon their professional statute. This would warrant in their minds the view that such "fine" was entirely an act of retribution and punishment. This, however, does not make it so, particularly if there is evidence, constitutionally supported,[9] basing the payments upon a reimbursement for additional expenses incurred in a tumultuous upset of the schools and the necessary expenses to reopen. And so it is that the teachers are visited in this contention regarding the use of the term "fine", with the same condemnation employed in their argument that the payment cannot be "liquidated damages" merely by designating it as such.
The real test in each instance is what in fact the payment is and whether there were in fact damages as a basis for a consensually imposed amount to be paid. The earlier recriminations and feelings were thereby resolved which are urged as constituting this really a "fine". The teachers are thereby refusing to recognize the very solution which obtained the results they desired. It is essential to a compromise, that earlier positions be mutually merged into the final result.
We consider the agreed payment here as a proper one of liquidated damages which may be shown. On such basis it is not violative of any state statute. It very happily afforded for each side precisely what they wanted. This was simply the vehicle for accomplishing it. The Court should not interfere with such a contract thus accomplished. The result accords with the public interest as well as with the protection of the private rights of the parties upon mutual considerations.[10]
*210 In an era of crisis living which churns up crisis litigation, there seems to us to be no place for needless roadblocks to reasonable solutions, if we are to retain a court or jury of reasonable men. The solution provided was like opening a gate which had been closed by the resignations duly accepted by the Board, following the teachers' initial departure from their classrooms "in breach of their school contracts for the year and in violation of Florida law."[11]
To hold that the School Board could not accept payment from the teachers as recompense for financial loss is to force litigation between the parties. Surely the Board, like other parties, has authority to agree upon an amount of money as liquidated damages occasioned by a breach of contract. The teachers obtained their desired tenure for the nominal $100. Mutual considerations which establish legal obligations between two or more parties form the basis of a binding contract.[12]
We hold that the substance of the accord did not violate the public policy or the laws of Florida. Indeed, the common sense solution urged upon the Board by public-spirited citizen mediators  and finally acceded to by the Board upon the representation that the teachers had approved it  may well have been the only avenue which would have served to reopen the schools of Lee County. This was the School Board's primary responsibility which it was required to perform.
We accordingly answer the certified question in the affirmative, that the School Board's action was correct and violated no state law of Florida.
We draw no distinction in this Court's answer and opinion on the certification, as to the two classes of teachers, whether they made payment and returned or not, for they are equally bound and have made their choice. Neither do we pursue the supplemental questions submitted by the parties regarding estoppel and waiver by the teachers upon payment being made. It seems unnecessary to comment where the law of the State of Florida, as well as the general law, is clear as to the effectiveness of a waiver in these and other circumstances upon unconditional and understood acceptance and performance.[13] We do not of course presume upon the certifying court's determination of an alleged violation of due process transcending such an estoppel or waiver, as contended by the teachers.
The further suggested question of whether an award of damages to teachers would violate Florida law, we answer in the affirmative upon the authority of Board of Public Instruction of Marion County v. Cannon, 83 Fla. 602, 92 So. 149 (1922), and Haddock v. Board of Public Instruction for Manatee County, 103 Fla. 1157, 139 So. 147 (1932), holding:
"The Constitution (article 12, § 9) provides that county school funds shall be used `solely for the support and maintenance of public free schools.' Even if a three-year teacher's contract is contemplated by the law and such contract is illegally breached by the county board of public instruction, whereupon the teacher takes other employment at less salary, such teacher cannot recover against the county school fund the difference between the contract salary and the smaller salary earned in other employments, since that would in effect violate the constitutional command that such *211 fund shall be used `solely for the support and maintenance of public free schools.'"
Having thus responded we dispatch with this opinion, and with our profound respects, the entire file in the cause to the Court of Appeals for the Fifth Circuit of these United States.
ROBERTS, C.J., and ADKINS and BOYD, JJ., concur.
ERVIN and CARLTON, JJ., concur in conclusion.
ERVIN, Justice (concurring specially):
I concur in the conclusion the certified question should be answered in the affirmative.
CARLTON, J., concurs.
NOTES
[1] "(5) Perform duties and exercise responsibility.  The school board may perform those duties and exercise those responsibilities which are assigned to it by law or by regulations of the state board and, in addition thereto, those which it may find to be necessary for the improvement of the district school system in carrying out the purposes and objectives of the school code."
[2] Fla. Stat. § 231.36(2), F.S.A., bars from employment for one year any teacher who leaves his position without first being released by the county board, and § 231.36 (3) (a) 2, restricts issuance of continuing contracts to teachers performing service which is "continuous except for leave duly authorized and granted." (emphasis ours)
[3] Id.
[4] See, for example, First National Bank v. Board of Public Instruction, 93 Fla. 182, 111 So. 521, 525 (1927).
[5] Even aside from the constitutional prohibitions set forth in Art. XII, public funds and public personnel may not be used for the advancement of a partisan political cause. McCarty v. Florida State Road Dept., 211 So.2d 226 (1st DCA Fla. 1968).
[6] State Board of Education Regulation 130-0.01(3) (emergency) 2-20-68.
[7] Providing in part, "Leave shall be officially granted in advance, and no action purporting to grant leave retroactively shall be recognized... ."
[8] Fla. Const. art. XII, §§ 9 & 13 (1885), then in effect.
[9] Id.
[10] Kislak v. Kreedian, 95 So.2d 510 (Fla. 1957); Bacon v. Karr, 139 So.2d 166 (2d DCA Fla. 1962); and Radabaugh v. Ware, 241 So.2d 738 (4th DCA Fla. 1970).
[11] Dade County Classroom Teachers' Ass'n, Inc. v. Rubin, 217 So.2d 293 (Fla. 1968); Pinellas County Classroom Teachers Ass'n, Inc. v. Board of Public Instruction of Pinellas County, 214 So.2d 34 (Fla. 1968).
[12] See Footnote 10.
[13] United Contractors, Inc. v. United Construction Corp., 187 So.2d 695, 701-702 (2d DCA Fla. 1966); Board of Public Instruction of Manatee County v. Cassidy, 122 Fla. 536, 155 So. 834, 835 (1934); Board of Public Instruction of Marion County v. Cannon, 83 Fla. 602, 92 So. 148 (1922).