PER CURIAM.
The stipulated facts of this cause show that the appellant, Walter Williams, on or about May 9, 1971 was arrested on a charge of first degree murder and incarcerated without bond.
At the time, Williams was a school teacher at Miami Killian Senior High School.
On June 2, 1971, the Board of Public Instruction of Dade County, the appellees, suspended Williams from his teaching position effective May 10, 1971, pursuant to recommendation of the Superintendent of Schools.
Subsequently, on August 9, 1971 Williams was found not guilty in the criminal proceeding by reason of temporary insanity. The court entered an order, however, committing the appellant to the South Florida State Hospital “until he was mentally capable of taking his place in society.”
Williams was committed until March 30, 1972, when he was released in the custody of his brother with the provision that he receive monthly medical treatment.
The facts as stipulated further reflect that while Williams was in the Dade County Jail a letter was hand-delivered to him on June 3, 1971, advising him that he had been suspended pending the resolution of the criminal charges against him, and also informing him of his right to a hearing pursuant to Fla.Stat. § 231.36(6), F.S.A. and his right to a bill of particulars.
On July 15, 1971, after the expiration date of Williams’ teaching contract for the 1970-71 school year, the School Board dismissed the appellant and discharged him as a teacher.
Thereafter, following his release from the mental hospital, the appellant through counsel requested that the Board supply him with notice of the charges upon which he was dismissed and grant him an opportunity to be heard by the School Board.
On May 2, 1973, Williams and his attorney, Marvin Emory, Jr., appeared before the board and reiterated their request. The board refused to reopen the matter.
On April 11, 1974, the appellant commenced this action seeking a writ of mandamus to compel the School Board to grant him a continuing contract as a school teacher; to reinstate him as a teacher commencing with the 1974-75 school year; and to award him back pay.
Following a consideration of the stipulated facts between the parties, the trial court determined that Williams had not demonstrated a clear legal right to the performance of a purely ministerial duty imposed upon the School Board, and accordingly he denied the writ of mandamus.
The appellant has raised four points on appeal attacking the legal conclusions of the court. We have carefully considered each point in light of the stipulated facts of this case, and we have decided that the conclusions of the trial court were correct.
The record shows that at the time Williams was arrested for first degree murder, he had almost completed his third year as a school teacher (the year ended on June 17, 1971).
*814 On April 14, 1971, the School Board had approved Williams for reappointment as a teacher on continuing contract, effective July 1, 1971, pursuant to Fla.Stat. § 231.-36(3)(a)(2).
The statute provides that a teacher is entitled to a continuing contract (tantamount to tenure) after completing three years of service within the same school district and within five successive years, “such service being continuous except for leave duly authorized and granted. . . . ”
Williams’ contract with the School Board also contained a clear provision that “the Teacher agrees to teach the full period of service for which this contract is made, in no event to be absent from duty without leave or to leave his position without first being released from his contract by the School Board. . . . ”
Essentially, Williams submits that as of April 14, 1971 (or at least by July 1, 1971, prior to his dismissal by the School Board) he acquired a vested interest in a continuing contract, which is elevated to the dignity of a property right, and the Schoof Board was estopped to deny him the privileges of a teacher with tenure.
A teacher under continuing contract is given the right to notice and a hearing prior to dismissal; but where the School Board determines not to renew the contract of a teacher on probationary status (annual contract), the right to a hearing is not granted, unless the teacher is either dismissed during the school year or suspended. Fla.Stat. § 231.36(6), F.S.A.; Ford v. Bay County School Board, Fla. App.1970, 246 So.2d 119; Thaw v. Board of Public Instruction of Dade Co., Fla., 432 F.2d 98 (5th Cir. 1970).
Williams, therefore, argues that even if he is not reinstated as a teacher, the School Board must grant him the right to a full hearing which is accorded to a teacher on continuing contract. We must disagree.
Under the facts and circumstances of this case and the statutes and contract governing the parties, we hold that the appellant never achieved tenured status (i. e., three years of continuous service) entitling him to reinstatement and back pay or alternatively to a hearing.
And, while there conceivably could be an instance where the School Board would be estopped to deny a teacher the status of a continuing contract which has been previously approved, we do not think the circumstances of this case call for invoking the doctrine of estoppel.
It is clear that Williams’ first degree murder arrest and his attendant inability to fulfill his third contract year was due solely to his own conduct, and the School Board in no way interfered with the full performance of the contract. Cf., Board of Public Instruction of Marion County v. Cannon, 1922, 83 Fla. 602, 92 So. 149.
Further, a literal reading of Section 231.36(2) indicates that the School Board would not have been authorized to re-hire Williams for at least one year due to his failure to completely serve out his one-year contract for the 1970-71 school year. See, National Education Ass’n v. Lee Co. Bd. of Pub. Instr., Fla. 1972, 260 So.2d 206.
It is our conclusion that the School Board acted properly and within the limits of its discretion in determining not to renew the appellant’s contract.
With respect to Williams’ claim that he is entitled to a hearing (although he did not request one within the ten-day period provided by law after he was notified of his suspension, and although, as we have held, he had not obtained a full right to tenure), we answer that contention in the same vein that a similar contention was resolved by the court in Thaw v. Board of Public Instruction of Dade Co., Fla., supra:
“. . . It would be too much to ask the school board to hold a hearing every time it determines not to renew the contract of a probationary teacher, or even every time a terminated teacher requests *815 a hearing without alleging unconstitutional action. The record in the instant case discloses that appellant’s termination was one of 1487 that were approved by the school board at its meeting. To require a hearing for each of these, when no possibility of unconstitutional action on the part of the school board exists, would place an intolerable burden on the board. . . . ”
The court further stated in the Thaw case that the purpose of an annual contract, during which a teacher has a probationary status, is for the School Board to examine and evaluate the teacher, and if found deficient in some manner for any reason within constitutional limits, not to re-hire him.
For the reasons assigned and upon the authorities cited and discussed, the order appealed is affirmed.
Affirmed.