281 So.2d 317 (1973)
Mrs. John W. ALLEN, Appellant,
v.
The ESTATE of Charles Francis CARMAN; Mrs. Sylvia Carman, Executrix, et al., Appellees.
No. 41352.
Supreme Court of Florida.
July 31, 1973.
*318 Warren A. Rosser and Eugene R. Kiser, for appellant.
James A. Smith, and Daniel Draper, Jr., Wicker, Smith, Pyszka, Blomqvist & Davant, Miami, for appellees.
McCAIN, Justice.
Pursuant to Rule 4.61, F.A.R., 32 F.S.A., this case is before us on certificate from the United States Court of Appeals, Fifth Circuit, reported at 446 F.2d 1276 (1971), in an appeal from a decision of the United States District Court, Southern District of Florida, granting summary judgment for defendant in a wrongful death action.
The certifying court has furnished us with the following statement of facts and issues in the cause:
"In December 1967 Charles Francis Carman, a painting contractor, owned and operated the Glaze Coating Company from his home in Lithonia, Georgia. He employed John W. Allen as a painter.[3] On December 28, 1967, while both men were living and working in Georgia, Carman secured a workmen's compensation insurance policy written by the Hartford Accident and Indemnity *319 Company and accepted by Carman in Georgia. This policy was in effect on August 26, 1968, the date of the airplane crash which is the subject of this suit.
"[3] There is no evidence to indicate whether at this time Allen was Carman's only employee.
"In June 1968 Carman moved to Sarasota, Florida where he continued to operate his painting business. Allen also moved to Florida[4] and was working for Carman in Florida during the week immediately preceding the accident.[5] Although Allen had previously driven his own truck to the job site at Live Oak, Florida from his home in Sarasota, upon returning to Sarasota he had left the truck with Mrs. Allen for repairs.
"[4] The parties differ as to whether Allen was domiciled in Florida or whether he merely resided there on a temporary or semi-permanent basis.
"[5] It was stipulated that Allen was employed by Carman on August 26, 1968.
"On August 26, 1968 an aircraft owned and operated by Carman and carrying Allen as its only other occupant crashed shortly after take off from the airport at Bradenton, Florida.[6] Both men were killed. At the time of the crash, in addition to the workmen's compensation policy, there was in effect an Aircraft Legal Liability Policy written by the Ranger Insurance Company covering Carman.
"[6] The evidence is sketchy as to whether the eventual termination point of the flight was to be the job site at Live Oak, some 200 miles distant, where Carman and Allen were then working."
"Shortly after the crash Mrs. Allen moved to her parents' home in North Carolina. Thereafter Hartford Accident and Indemnity Company made voluntary payments to her totaling approximately $4500 during the period December 12, 1968 to March 1970, at which time Mrs. Allen notified the company that she would not accept further payments. She retained all payments made up to that time. She never filed a claim with the Florida Industrial Commission for workmen's compensation benefits and neither requested nor received a hearing before the Commission. The Commission has made no award to Mrs. Allen.
"On November 5, 1969 Mrs. Allen filed suit in the United States District Court for the Southern District of Florida for the wrongful death of her husband against the estate of Carman and his executrix, alleging that death was proximately caused by the negligence of Carman as pilot of the aircraft. Ranger Insurance Company intervened as a defendant and asserted as a defense the exclusivity of the workmen's compensation remedy as a bar to Mrs. Allen's wrongful death action. Ranger also defended on the additional ground that an `employee exclusion' provision ... of its policy excluded coverage of Allen in any event. Its motion to add Hartford Accident and Indemnity Company as a party defendant was denied.
"The plaintiff moved for partial summary judgment, claiming that the Florida Workmen's Compensation Law was inapplicable because Carman did not have a minimum of three employees and had posted no notice of an intention to cover an excluded employee as required by 15 F.S.A. § 440.04(2)... . The plaintiff also contended that the `employee exclusion' provision of the Ranger policy was inapplicable because Allen was not within the scope of his employment ... at the time of the accident, that the airplane transportation had been furnished as a matter of convenience rather than as part of the employment contract, and that the policy's definition of `passenger' did not exclude coverage of those employees who were neither pilot nor crew.
"The defendants and intervenor also filed a motion for summary judgment, asserting that the exclusive remedy of workmen's compensation barred the suit *320 under 15 F.S.A. § 440.11 and that § 440.04(3) ... dispensed with the requirement that an employer post notice that he had waived his exemption not to come within the Workmen's Compensation Law.[11]
"...
"[11] There was no proof that the § 440.04(2) notice had been posted. By summary judgment the trial court simply treated this as immaterial."
"The District Court denied the plaintiff's motions but granted defendants' motion for summary judgment, and this appeal followed.
"3. Questions to be Certified

"1. (a) Under Florida law may an employer with only one employee invoke the defense of exclusivity of workmen's compensation?
(b) If the answer to (a) is in the affirmative, may the employer assert the defense of exclusivity of workmen's compensation when
"(i) the employer has secured a valid workmen's compensation policy covering his one employee, but
"(ii) when the employer has not posted notice of his intention to cover his one employee?
"(c) If posting of notice is required for the defense of exclusivity, upon whom does the burden of proof rest  employer or employee  to establish posting?
"2. Assuming that the facts warrant a finding that the airplane was being used to transport Carman and Allen to the Live Oak job site or to some other job site or prospective job site, was Allen's death sustained in the course of his employment?[12]
"[12] 440.03 Application
"Every employer and every employee, unless otherwise specifically provided, shall be presumed to have accepted the provisions of this chapter, respectively to pay and accept compensation for injury or death, arising out of and in the course of employment, and shall be bound thereby, unless he shall have given prior to the injury, notice to the contrary as provided in § 440.05."
"3. In order for a workmen's compensation policy written in Georgia to be valid under the Florida Workmen's Compensation Law, need it be endorsed or otherwise approved by (i) the insurer, (ii) the Florida Industrial Commission or (iii) both?
"4. Does the definition of `passenger' in the Ranger liability policy exclude coverage of those employees of the insured who are neither pilot nor crew?
"..."
We will consider these issues in the order certified. With respect to the defense of exclusivity (Question 1 [a]), it is the position of the appellant, Mrs. Allen, that the Florida Workmen's Compensation Law does not provide any procedure whereby an employer with only one employee, who would otherwise be exempt from the operation of Chapter 440, may accomplish a waiver of such exemption and elect to come within the coverage of the statute. We disagree.
Clearly, an employer with one employee is normally outside the scope of the Workmen's Compensation Law.[1] Fla. Stat. § 440.02(1)(b)(2) F.S.A. covers this point expressly by defining the term "employment" for purposes of the Act to include, "All private employments in which three or more employees are employed by the same employer".
*321 However, by taking either of the steps contemplated by Fla. Stat. § 440.04, F.S.A., an otherwise exempt employer may elect to waive his exemption and place himself within the purview of the Act. At the time of the accident which is the subject of this suit (December 28, 1967), Fla. Stat. § 440.04, F.S.A., styled "Waiver of Exemption", contained the following provisions:[2]
"440.04 Waiver of exemption. 
"(1) An employer or employee who has exempted himself by proper notice from the operation of this chapter may at any time waive such exemption and thereby accept the provisions of this chapter by giving notice as provided in § 440.05.
"(2) Every employer having in his employment any employee not included in the definition `employee' or excluded or exempted from the operation of this chapter may at any time waive such exclusion or exemption and accept the provisions of this chapter by giving notice thereof as provided in § 440.05, and by so doing be as fully protected and covered by the provisions of this chapter as if such exclusion or exemption had not been contained herein.
"(3) When any policy or contract of insurance specifically secures the benefits of this chapter to any person not included in the definition of `employee' or whose services are not included in the definition of `employment' or who is otherwise excluded or exempted from the operation of this chapter, the acceptance of such policy or contract of insurance by the insured and the writing of same by the carrier shall constitute a waiver of such exclusion or exemption and an acceptance of the provisions of this chapter with respect to such person, notwithstanding the provision of § 440.05 with respect to notice."
Fla. Stat. § 440.05, F.S.A., deals with notice of waiver of exemption. Subsection 1 *322 thereof in force and effect at all times relevant to this case, which with minor amendments constitutes the entire present section,[3] required the posting of notice by the employer:
"Every employer who ... waives such exemption . .. shall post and keep posted in a conspicuous place or places in and about his place or places of business typewritten or printed notices to such effect in accordance with a form to be prescribed by the commission. He shall file a duplicate of such notice with the commission."
In our judgment, the plain meaning of Fla. Stat. § 440.04(2), F.S.A., permits an otherwise exempt employer to waive his exemption and bring himself within protection of the Act to the same extent as if he had not been initially exempt. Likewise, it is clear from a reading of subsection (3) that a person not otherwise considered a covered "employee", or whose services are not included in the definition of "employment", but for whose benefit a contract of workmen's compensation insurance has been secured, is subject to the provisions of the Chapter by virtue of the acceptance of the policy by his employer and the writing of the same by the compensation carrier. We think there can be no question that the purpose and effect of Fla. Stat. § 440.04, F.S.A., is to empower an exempt employer to voluntarily assume the obligations and privileges of the Workmen's Compensation Act and thereby insulate himself from common law liability pursuant to Fla. Stat. § 440.11, F.S.A.
Precedent supports this position. In Strickland v. Al Landers Dump Trucks, Inc., 170 So.2d 445 (Fla. 1965), claimant was an independent contractor and therefore normally excluded from the operation of the Workmen's Compensation Act by Fla. Stat. § 440.02(2)(c)(1), F.S.A. However, the employer had voluntarily issued a workmen's compensation insurance policy covering claimant. We held:
"Under the provisions of Section 440.04(3), F.S.A., the acceptance of the policy by the respondent and the writing of it by the carrier constitute a waiver of the exclusion of claimant from the Act and operate to bring the claimant under its coverage."
Accordingly, it is our judgment that the defense of exclusivity of workmen's compensation is available to an employer with one employee who has, by obtaining workmen's compensation insurance coverage for his employee, waived the statutory exclusion from the coverage of the Act otherwise available to him. We answer Question 1(a) in the affirmative.
Question 1(b) is also answered affirmatively. Fla. Stat. § 440.04(3), F.S.A., supra, (now Fla. Stat. § 440.04[2] F.S.A.) provides that the acceptance of a policy of workmen's compensation insurance by the employer, covering any person whose services are not included in the definition of "employment", and the writing of the same by the carrier, shall constitute a waiver of such exemption and an acceptance of the provisions of Chapter 440 with respect to such person, "notwithstanding the provision of § 440.05 with respect to notice". (Emphasis supplied.) Thus the critical act contemplated by the statute to secure to employer and employee the benefits thereunder is the purchase and acceptance of the policy, not the posting of notice. Indeed, *323 as early as 1943 we held, in Hughes v. B.F. Goodrich Co., 152 Fla. 170, 11 So.2d 313, 1) that compliance by the employer with the notice-posting requirements of Fla. Stat. § 440.40, F.S.A., was not a prerequisite to the statutory presumed acceptance of the provisions of the act by employees, and 2) that the failure to post notice did not give the employee a right to maintain an action at common law. While that case considered a different section of the statute from that at issue here, the rationale is analogous and reflects the consistent policy of this Court to construe the Act so as to secure its benefits to injured persons with a minimum of technicalities.[4]
In view of our affirmative response to Question 1(b), it becomes unnecessary to consider Question 1(c).
We are also asked (via Question 2) to determine whether Allen's death occurred in the course of his employment, assuming that the employer's airplane was being used to transport Carman and Allen to the Live Oak job site or to some other job site or prospective job site. We conclude that it was not. The rule in Florida holds that injuries sustained by employees when going to or returning from their regular place of work are not deemed to arise out of and in the course of their employment. Fidelity & Casualty Co. of New York v. Moore, 143 Fla. 103, 196 So. 495 (1940).
Several exceptions to the general rule have been established by this Court but none of these apply to Allen's situation. The record affirmatively discloses that the transportation provided on the day of the accident was furnished as a convenience to the employee, rather than as an express or implied part of the employment contract between the parties. For cases formulating the contractual exception to the "going and coming" rule see Southern States Mfg. Co. v. Wright, 146 Fla. 29, 200 So. 375 (1941); Lee v. Florida Pine & Cypress, 157 So.2d 513 (Fla. 1963), and Swartzer v. Food Fair Stores, Inc., 175 So.2d 36 (Fla. 1965). Other exceptions to the rule, including the special hazard exception,[5] and the principle that employees whose occupation involves travel as part of the employment are covered while traveling,[6] are clearly inapplicable in the instant situation, and require no discussion.
Question 3 posed by the certifying court queries whether a workman's compensation policy written in Georgia must be endorsed or approved by the insurer, the Florida Industrial Relations Commission, or both, to be effective in Florida. Generally, it appears to us that the answer to this question would depend on the wording of the policy itself.[7] In this case, however, we deem it unnecessary to consider the actual policy provisions, inasmuch as the insurer, the Hartford Company, has not sought to challenge the validity or effectiveness of the policy in Florida. Indeed, Hartford admitted its obligations under the policy by voluntarily making payments to Mrs. Allen in the amount of $4,500. Moreover, in our view, the proper party to raise the question of the policy's validity in Florida is the insurance company rather than the claimant. Even assuming (without deciding), that Mrs. Allen were a third party beneficiary to the contract between the carrier and the employer, she would be entitled to challenge the contract only to the extent she were prevented from receiving benefits thereunder as a result of the failure of one or both of the *324 parties to abide by it.[8] That situation does not obtain here. In the context of this case, Question 3 is answered negatively.
The last issue for our consideration involves the scope and effect of the Ranger liability policy covering the employer's airplane. Specifically, the Court of Appeals asks: "Does the definition of `passenger' in the Ranger liability policy exclude coverage of those employees of the insured who are neither pilot nor crew?" We note first that the "Coverage" provisions of the Ranger policy insure against a variety of risks, including inter alia bodily injury of certain persons other than passengers (Coverages A and D), bodily injury to passengers (Coverage B), and property damage liability (Coverage D). Coverage B, injury to passengers, obligates the insurer to:
"... pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any passenger as defined herein, caused by an occurrence and arising out of the ownership, maintenance or use of the aircraft."
The policy defines "passenger" as follows:
"1. Passenger. The work `passenger' means any person or persons while in, on or entering the aircraft for the purpose of riding or flying therein or alighting therefrom following a flight or attempted flight therein, excluding crew or pilots."
Certain risks are excluded from coverage under the policy. Of significance in the instant case is the following exclusion:
"This policy does not apply:
......
"(5) under Coverages A, B or D to bodily injury, to sickness, disease or death of any employee of the Insured while engaged in the duties of his employment or to any obligation for which the Insured or any Company as his Insuror may be held liable under any Workmen's Compensation Law; ... ."
It is obvious that Coverage B covers "passengers" as defined, and that the definition of "passenger" excludes only crew and pilot. But Exclusion # 5 appears to exclude persons who fall within the definition of "passenger", supra, if they are also employees of the insured "engaged in the duties of their employment", or if they are covered by the Florida Workmen's Compensation Act at the time of the accident. Thus a difficult problem of construction is presented when an employee-passenger is injured in the course of his employment within the meaning of the Workmen's Compensation Act. But in this instance we have already determined, in our answer to Question 2, that Mr. Allen was outside the course of his employment at the time the accident took place. Therefore, Exclusion #5 does not apply to him, and he must be considered a passenger under the policy. Whether he would also be considered a passenger under the Ranger policy if he were within the purview of Chapter 440 at the time of the accident need not be answered at this time.
Having thus responded, we dispatch with this opinion, and with our profound respects, the entire file in the cause to the Court of Appeals for the Fifth Circuit of these United States.
CARLTON, C.J., and ROBERTS, ERVIN, ADKINS, BOYD and DEKLE, JJ., concur.
NOTES
[1] In 1973, the Legislature of Florida amended Fla. Stat. § 440.02(1)(b)(2), to cover all private employments in which one or more employees are employed by the same employer. Fla.H.R. 311 (1973).
[2] Until September 1, 1970, the Florida Workmen's Compensation Act was an elective remedy. Pursuant to Fla. Stat. § 440.03, F.S.A., which was repealed by Chapter 70-148, Laws of Florida, both employers and employees were empowered to waive coverage under the Act. For that reason, Fla. Stat. §§ 440.04 and 440.05 F.S.A., then in force included provisions relative to nonacceptance of the Act (440.04[1]) and notice of nonacceptance (440.05[2]). However, nonacceptance by the employee is not an issue on this appeal. We note, moreover, that Fla. Stat. § 440.03, F.S.A., presumed acceptance of the provisions of the Act by both employer and employee; therefore, the employee was required to affirmatively indicate his desire for exemption, which he failed to do in this instance. Accordingly, we limit our discussion to the employer's waiver of exemption resulting from the purchase of a workmen's compensation insurance policy.

In 1970, Fla. Stat. § 440.04, F.S.A., was amended to conform to the new requirement that coverage be mandatory rather than elective. That section now provides:
"440.04 Waiver of exemption. 
"(1) Every employer having in his employment any employee not included in the definition `employee' or excluded or exempted from the operation of this chapter may at any time waive such exclusion or exemption and accept the provisions of this chapter by giving notice thereof as provided in § 440.05, and by so doing be as fully protected and covered by the provisions of this chapter as if such exclusion or exemption had not been contained herein.
"(2) When any policy or contract of insurance specifically secures the benefits of this chapter to any person not included in the definition of `employee' or whose services are not included in the definition of `employment' or who is otherwise excluded or exempted from the operation of this chapter, the acceptance of such policy or contract of insurance by the insured and the writing of same by the carrier shall constitute a waiver of such exclusion or exemption and an acceptance of the provisions of this chapter with respect to such person, notwithstanding the provision of § 440.05 with respect to notice."
It will be noted that with regard to waiver of exemption by the employer, § 440.04 was not substantially changed in 1970.
[3] Fla. Stat. § 440.05, F.S.A., was amended in 1970 (see footnote 1) to eliminate the right of the employee to voluntarily exempt himself from the operation of the Act. The amended section provides:

"440.05 Notice of waiver of exemption. 
"Every employer who waives exemption or exclusion pursuant to section 440.04 shall post and keep posted in a conspicuous place or places in and about his place or places of business typewritten or printed notices to such effect, in accordance with a form prescribed by the division. He shall file a duplicate of such notice with the division."
[4] See, for example, Turner v. Keller Kitchen Cabinets, Southern, Inc., 247 So.2d 35 (Fla. 1971); also note Fla. Stat. § 440.18(4), F.S.A., relating to notice of injury or death.
[5] See Naranja Rock Co. v. Dawal Farms, 74 So.2d 282 (Fla. 1954).
[6] N. & L. Auto Parts Co. v. Doman, 111 So.2d 270 (Fla.App.1st, 1959), certiorari dismissed with opinion, 117 So.2d 410 (Fla. 1960).
[7] The policy does not appear in the certified record.
[8] Woodbury v. Tampa Waterworks Co., 57 Fla. 243, 49 So. 556, 21 L.R.A.,N.S. 1034 (1909); First National Bank v. Perkins, 81 Fla. 341, 87 So. 912 (1921); American Surety Co. v. Smith, 100 Fla. 1012, 130 So. 440 (1930); Auto Mut. Indem. Co. v. Shaw, 134 Fla. 815, 184 So. 852 (1938); see also 81 A.L.R. 1271 and 148 A.L.R. 359; and 7 Fla. Jur. Contracts § 98, and cases cited therein.