489 F.2d 777
 COASTAL PETROLEUM COMPANY, Petitioner-Appellee,
v.
SECRETARY OF THE ARMY OF the UNITED STATES of America, et
al., Respondents, Trustees of the Internal
Improvement Trust Fund of the State of
Florida, Respondent-Appellant.
 No. 71-2589.
 United States Court of Appeals, Fifth Circuit.
 Dec. 6, 1973, Rehearing and Rehearing En Banc Denied March
29, 1974, See 491F.2d 973.
 
 William Huggett, Robert J. Beckham, Miami, Fla., for respondent-appellant.
 Charlie Luckie, Jr., Tampa, Fla., C. Dean Reasoner, Washington, D.C., Joseph C. Jacobs, Tallahassee, Fla., Irving R.M.Panzer, Washington, D.C., for petitioner-appellee.
 Robert W. Rust, U.S. Atty., Miami Fla., Robert L. Shevin, Atty. Gen. of .fla., Tallahassee, Fla., William E. Welch, Acting Dist. Counsel, Corps of Engineers, Jacksonville, Fla., Stanley R. Resor, Secretary of the Army, Washington, D.C., Gen. Litigation Section, Land & Nat. Resources Div., U.S. Dept. of Justice, Washington, D.C., Robert Grafton, Central and South Fla. Flood Control Dist., West Palm Beach, Fla., Daniel S. Dearing, Chief Trial Counsel, Dept. of Legal Affairs, Tallahassee, Fla., for other interested parties.
 Before BROWN, Chief Judge, and BELL and MORGAN, Circuit Judges.
 JOHN R. BROWN, Chief Judge:
 
 
 1
 This case presents another of those instances in which the Federal bench is called upon by the Erie siren call to divine the correct substantive principle of State law from the cold, plain words of a State statute. While it is clear that it is incumbent upon us as judicial officers of the United States to adjudicate cases and controversies properly within the jurisdiction of our court, we are bound too by the chords of Federalism to give proper deference to the laws of the several States and the final power and duty of the judicial officers of those States to interpret those laws. Fortunately, the laws of the State of Florida and the rules of its Supreme Court allow us to accommodate our desire to correctly apply the rule of law of the forum State to the case currently before the court by certifying these matters to the Supreme Court of Florida.
 
 
 2
 What started out as a contest between Coastal (Lessee) and the United States Army Engineers to obtain a permit to drill for limestone in Florida's Great Lake Okeechobee ended up in its present simple, but decisive, struggle between Coastal (Lessee) and Florida.[1] At stake are not only the likelihood of millions of dollars viewed from a commercial perspective, but the conservation of this great natural resource by Florida for its citizens,[2] and in which it has at least for the moment a staunch ecological ally.[3]
 
 
 3
 Validity of the underlying leases turns on the construction and application of ,Florida statutes and the actions of Coastal and the Trustees under the leases. Consequently we are dealing not only with Florida law-- over which, unlike a diversity federal court, Ford Motor Co. v. Mathis, 5 Cir., 1963, 322 F.2d 267, 269, Florida has not only the latest, but the last word-- but with matters of great public concern. Fortunately for Florida[4] matters of such public moment need not be exposed to the risk of an Erie guess by Federal Judges, no matter how competent and conscientious. For thanks to its enlightened procedure we now, as we have done many times,[5] certify this to the Supreme Court of Florida.
 
 
 4
 For our purposes we can sketch the background broadly with no purpose to hem in the Supreme Court of Florida. Pursuant to its statutory authority to lease state lands for the development of sources of oil, gas, and other minerals, Florida Statutes, Chapter 253, F.S.A., the Florida Board of Trustees for the Internal Improvement Trust Fund leased several tracts of land[6] at the bottom of Lake Okeechobee to Coastal's assignor in the early 1940's. The leases have been the subject of prior litigation.[7] The Trustees filed suit in 1945 seeking a declaratory judgment to the effect that the leases were valid. In Watson v. Holland, 1945, 155 Fla. 342, 20 So.2d 388, the Supreme Court of Florida was again presented with an opportunity to rule on the leases. That court held in Collins v. Coastal Petroleum Co., Fla.App., 1960, 118 So.2d 796, that the leases encompassed the production of all mineral resources, not merely oil and gas.
 
 
 5
 As the case comes to us, decision on the validity of the leases turns on whether Coastal has complied with the exploratory and developmental drilling obligations imposed by certain Florida statutes and the terms of the resulting leases. The question was not so much what-- from a physical operational standpoint-- had been done, but whether such activities undertaken on the various tracts and leases satisfied the statutory/lease obligations as to the specific leases at issue (see note 6, supra). This is entirely a Florida question on which there are not Erie lights which justify risking these vital interests by an erroneous decision.
 
 
 6
 We again followed our experience-born judgment that counsel can best prepare the certificate of the statement and question to be certified (see cases in note 5, supra). A letter directive[8] from our Clerk called on counsel to formulate a statement with questions as to which both parties agreed with points of difference being pinpointed with supporting memoranda pro and con for choices by this Court. After months of strenuous efforts and numerous meetings this was filed in a way that has enabled us readily to make and indicate our choices.[9]
 
 
 7
 Some general comments are in order. Coastal insists that compliance with exploratory drilling obligations was not in the case below and there are insufficient facts in the record upon which to meaningfully certify the related questions. There are several answers. First, this was expressly put in direct issue in the complaint, answer and various cross claims.[10] Indeed, it was this very contention of the Board of Trustees which the Department of the Army regarded as decisive (see note 3, par. 2).
 
 
 8
 Next, the record is filled with voluminous schedules, charts and tabular materials showing what Coastal has done on these and other leases which Coastal urges they were allowed by the Trustees to 'borrow' to validate the leases here in question.[11]
 
 
 9
 And to cap it all off, in the jointly acceptable portion of the appended certificate (par. 2) this claim and denial is precisely set forth.
 
 
 10
 Finally, the Supreme Court of Florida is well equipped to handle factual matters as witness its most recent opinion in response to our certification. Allen v. Estate of Carman, Fla., 1973, 281 So.2d 317 in response to certification, 5 Cir., 1971, 446 F.2d 1276 and our opinion after certification, 5 Cir., 1973, 486 F.2d 490, p. 491 as to the question of the Florida Court's resolution of factual disputes. The Supreme Court has plenary power to determine whether there is from its Florida point of view an adequate basis for answering the questions.[12]
 
 QUESTIONS CERTIFIED
 
 11
 CERTIFICATION FROM THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT TO THE SUPREME COURT OF FLORIDA, PURSUANT TO 25.031, FLORIDA STATUTES 1971, AND RULE 4.61, FLORIDA APPELLATE RULES.[13]
 
 
 12
 To the Supreme Court of Florida and the Honorable Justices thereof:
 
 
 13
 It appears to the United States Court of Appeals for the Fifth Circuit that the above-styled case in this Court involves a question or proposition of the law of the State of Florida which is determinative of the cause, and there appear to be no clear, controlling precedents in the decisions of the Supreme Court if Florida. This Court hereby certifies the following questions of law to the Supreme Court of Florida for instructions concerning said questions of law, based on the facts recited herein, pursuant to 25.031, Florida Statutes 1971, and Rule 4.61, Florida Appellate Rules as follows:
 
 1. Style of the Case
 
 14
 The style of the case in which this Certificate is made is Coastal Petroleum Company v. Secretary of Army of United States, and Trustees of Internal Improvement Trust Fund of State of Florida, being Case No. 71-2589, United States Court of Appeals for the Fifth Circuit; such case being an appeal from the United States District Court for the Southern District of Florida.
 
 2. Nature of the Case
 
 15
 This is a case in which Coastal Petroleum Company brought suit in August, 1968, in the Federal District Court, against certain federal officials and state officials, seeking to compel the issuance of a federal permit for drilling for limestone under its Drilling Lease 248. The Trustees of the Internal Improvement Trust Fund, defendants in the case, filed on April 23, 1969, an answer containing a counterclaim alleging that Lease 248 should be declared void for failure of Coastal to comply with the drilling obligations of the lease. Coastal then, on May 12, 1969, filed a counterclaim to that counterclaim, seeking a declaration that all three of its Leases, Lease No. 224-A, Lease 224-B and Lease 248 be declared valid and binding leases and asserting that Coastal had fully complied with each and every term, condition and obligation of the leases. On May 6, 1969, the Trustees filed an action in state court seeking a declaration that all three leases should be declared void as against public policy; this action was then removed to the federal court and consolidated with Coastal's earlier action there. The leases were held valid by the District Court.
 
 
 16
 On appeal by the Trustees, all issues have been eliminated except the question as to whether Coastal's three leases are void for a failure by Coastal to comply with the drilling requirements.
 
 3. Statement of Facts
 
 17
 Title to publicly-owned lands, including bottoms of salt and fresh waters, of the State of Florida, is irrevocably vested in the Trustees of the Internal Improvement Fund of the State of Florida for management and sale. Florida Statutes 253.01 and 253.02, F.S.A.
 
 
 18
 In 1941, Arnold Exploration, Inc., renamed Coastal Petroleum Company, entered into a contract with the Trustees which was designated 'Exploration Contract for Oil, Gas and Minerals and Option to Lease'. This contract was entered into pursuant to the authority of the Trustees granted by Chapter 20,680, Laws of Florida, Acts of 1941.
 
 
 19
 In 1944 the Trustees and Coastal entered into Drilling Leases 224-A (App.Ex. 26) and 248 (App.Ex. 44, 46); in 1946 they entered into Drilling Lease 224-B (App. 73) (App.Ex 23, 27). Each recites that it was executed pursuant to the exploration contract abovementioned and specifically refers to Chapter 20,680. These contracts were re-executed in 1947.[14]
 
 
 20
 In 1945, Chapter 22,824 of the Laws of Florida was enacted which granted new and different authority to the Trustees to issue oil and gas leases.
 
 
 21
 The change in the 1954 Statute, which is pertinent to the issue at bar, relates to drilling requirements: the 1941 Statute required one test well to be drilled on the lands leased within the first five-year period, and one additional well in each succeeding five-year period. The 1945 Statute required one test well to be drilled every two and one-half years each to a minimum depth of 6,000 feet.[15]
 
 
 22
 Each lease stipulates that if any sentence, paragraph, clause or provision of the re-executed drilling lease is invalid by virtue of a Florida law enacted subsequent to October 4, 1941, then the provisions of the original lease take precedence over the re-executed lease.[16]
 
 
 23
 The only leases physically in the record are the re-executed leases of 1947. They require one test well to be drilled on, or contiguous to, each drilling block located in the lease within the first five-year period of the lease and the drilling of at least one additional well in each succeeding five-year renewal period upon, or contiguous to, each separate drilling blick, each well to be drilled to a depth of not less than 6,000 feet. Each lease states: 'If no well shall be commenced within the first five-year period, all rights to renew this lease shall become unenforceable and the entire lease shall be void, and if during each subsequent five-year renewal period hereof no well or wells be commenced as required herein, such renewal lease contract in its entirety shall become terminated as to any area in such drilling block not in a status conformable in this particular with the requirements of this lease'.
 
 
 24
 The pattern of the three Coastal leases is that a 'primary term' of five years is prescribed in each lease. If, at any time within that period, Coastal satisfied its two lease obligations of (1) drilling, and (2) rental payments, another five-year period would automatically start running, and if Coastal satisfied the lease obligations at any time within the second five-year period, another such period would commence to run, and so on for successive five-year periods; the fifth five-year period has not yet ended because the District Court suspended all obligations under the leases until the termination of this litigation.
 
 
 25
 The 1941 and 1945 Statutes both contain provisions providing that the 'leases shall be void' thereunder if certain drilling requirements are not met within each term. The leases also contain provisions that they 'shall be void' if certain drilling obligations are not met.[17]
 
 
 26
 It is uncontested that Coastal has drilled more total footage than these leases require. Some of that footage was on other lands (on which the Trustees had a one-eighth overriding royalty) not covered by Coastal's leases.
 
 
 27
 Throughout four full five-year periods of each lease, the Trustees repeatedly adopted formal resolutions to the effect that Coastal had satisfied all its drilling obligations. Some of the resolutions related to footage on other lands (on which the Trustees had a one-eighth overriding royalty) not covered by Coastal's leases, and credited some of this footage towards satisfaction of the obligation of the leases. Without such credits from such other lands, the Trustees would not have been able to adopt these resolutions of compliance.
 
 
 28
 Coastal has never complied with the drilling obligations imposed by the 1941 and 1945 Statutes or by the leases themselves (App.Ex. 66-71).[18]
 
 
 29
 The Trustees have certified by formal resolution many times during the life of these leases, that Coastal-- as a result of allocations or credits of footages drilled in areas not covered by these leases-- has met all its drilling obligations and all its rental payments. (App.Ex. 66-71).[18]
 
 
 30
 During the fourth five-year period, Coastal did not fulfill the drilling requirements of Leases 248 and 224-A, and the Trustees did not certify that the drilling requirements had been met as to those Leases 248 and 224-A. (App.Ex. 71, 67).[18]
 
 
 31
 Following those certifications by the Trustees, Coastal has continued to expend monies and pay rentals under the leases, and Coastal has entered into contracts with other companies for drilling pursuant to which large expenditures were made. The most recent example of this was in 1965 when Coastal contemplated entering into a contract with Socony Mobil Oil Company for drilling under these leases. This contract (which, as the District Judge in this case found, 'stated that the leases were not encumbered') was presented to the Trustees in advance under a provision of each lease requiring written consent in advance from the Trustees. By formal resolution, the Trustees gave their consent and approved the contract.
 
 
 32
 An employee of the Trustees then wrote a letter to Mobil advising Mobil that Coastal possessed drilling credits available for satisfying the lease requirements.
 
 
 33
 Following the Trustees' formal resolution and receipt of the letter described above, Mobil and Coastal proceeded under the contract, and Mobil expended over three million dollars ($3,000,000) on this matter.
 
 
 34
 The 1941 statute states that a test well shall be drilled on each lease within each five-year period whereas the 1945 statute requires one test well to be drilled every two and one-half years, each well to have a minimum depth of 6,000 feet.[19]
 
 
 35
 In reply to Coastal's contention that the 1941 statute was never raised by the Trustees in the trial court, this is not a proper question to be certified to the Florida Supreme Court as it is asking the Fifth Circuit to tell the Florida Supreme Court that it is impossible to answer some questions because of lack of evidence.[20]
 
 
 36
 The three leases require certain annual rental payments to the Trustees aggregating $69,600.32. Over the period of these leases, some twenty-five years, Coastal Petroleum Company has paid and the Trustees have accepted the sum of one million, five hundred five thousand, one hundred forty-six dollars ($1,505,146.00) as rental. The total expenditures made by Coastal and its associates pursuant to these leases, including the above rental payments, amount to the sum of sixteen million, three hundred seventy thousand, ninety-seven dollars and seventy-four cents ($16,370,097.74).
 
 
 37
 The leases also require that royalties of one-eighty of production be paid the Trustees by Coastal. Over the period of these leases, no royalties have been accrued or paid, since there has been no production.
 
 
 38
 The leases each contain a notice provision to the effect that a breach of lessee's obligations shall not work as a forfeiture of the lease or be ground for cancellation, except as forfeitures may be imposed by laws of the State, and further providing that if the Trustees believe at any time that lessee is not complying with the lease, they shall notify lessee in writing of the facts relied upon as constituting a breach, and lessee (if in default) shall have thirty days in which to commence compliance.
 
 
 39
 No written notification was given Coastal by the Trustees of facts claimed by the Trustees to constitute a breach of the lease other than the complaint filed by the Trustees in the state court and the answer and counterclaim filed by the Trustees in the Federal Court.
 
 
 40
 The parties to this action have been in litigation concerning these leases at least five times. Those cases are Watson v. Holland, 155 Fla. 342, 20 So.2d 388 (1944); United States v. Certain Lands in Citrus County, Florida, C.A. No. 162, United State District Court for the Southern District of Florida, decided November 2, 1954; Collins v. Coastal Petroleum Company, 118 So.2d 796 (Dist.Ct.App.Fla.1960), certiorari discharged, 125 So.2d 300; Coastal Petroleum Company v. Bryant, Chancery No. 18569, Circuit Court of the Second Judicial District, Leon County, Florida, decided May 17, 1963; and Burns v. Coastal Petroleum Company, 194 So.2d 71 (Fla.App. 1st Dist., 1967).
 
 
 41
 The Trustees did not, in any of the above cases, file a counterclaim to declare Coastal's leases void for failure to meet its drilling obligations, of plead or even suggest that Coastal had failed to meet its drilling obligations under a statute or under its leases. However, Coastal in the above cases never sought a declaration of those same issues.
 
 
 42
 In still another case in which Coastal was not a party, and in which the issues in the present case were not involved or adjudicated, Kirk v. Flowers, No. 6720, Circuit Court of the Twelfth Judicial Circuit in and for Charlotte County, Florida, decided in 1967, the Trustees asserted the validity and primacy of Coastal's leases in attacking a County zoning ordinance which would have barred offshore well drilling. The Trustees told the court that because the State's authority was preemptive beyond three miles from the shore, their power to execute leases under State law was superior to the County's zoning power; that Coastal's leases were valid; and that if the ordinance was not invalidated, the Trustees would be obligated to refund all of Coastal's rental payments and other expenses incurred by Coastal and its associates. The Court held the County regulation invalid because the subject matter was exclusively granted to the State, the area involved being beyond the three mile limit from Charlotte County.
 
 QUESTIONS TO BE CERTIFIED
 
 43
 1. Are Coastal's rights and obligations governed by the 1941 statute, the 1945 statute, or by both statutes? Both 1941 and 1945 statutes are to be considered.[21]
 
 
 44
 2. Where the State of Florida has granted oil, gas and mineral leases under the authority of a statute, which contains express provisions and criteria as to drilling requirements and performance standards:
 
 
 45
 (i) Would the leases be void as a result of non-compliance with the drilling obligations imposed by (a) said statute, or (b) the leases themselves?
 
 
 46
 (ii) If so, could the Trustees, by resolution, effectively excuse noncompliance with drilling obligations?
 
 
 47
 (iii) Does an employee of the Trustees, holding no office, have the power to waive the requirements of said statute or the leases by writing an advisory letter?[22]
 
 
 48
 3. Does failure to fulfill statutory drilling requirements automatically cancel the leases?
 
 
 49
 (i) If not, is written notice by the Trustees a condition precedent before the leases become void?
 
 
 50
 (ii) If so, were the pleadings herein sufficient written notice by the Trustees?[23]
 
 
 51
 Does paragraph 22 of each of Coastal's leases, embodied in each lease prior to its modification, permit Coastal to have a reasonable time to comply with statutory requirements in the event a sentence, paragraph, clause or provision of the modified lease is held invalid?[24]
 
 
 52
 4. Does failure to comply with the statutory and lease drilling requirements, if proven, automatically determine that the lessee has not operated as a reasonably prudent operator?
 
 
 53
 5. Are these issues foreclosed by principles of res judicata or collateral estoppel, or similar principles, by reason of the Florida court cases (cited earlier) in which Coastal and the Trustees have both been parties?
 
 
 54
 6. Can the Trustees, as a public body, be foreclosed and should they be foreclosed, by reason of equitable estoppel on the basis of the facts set forth above?
 
 
 55
 7. Are the Trustees foreclosed from urging invalidity of the leases by reason of the Florida court rules requiring the filing of compulsory counterclaims?
 
 
 56
 8. Are the Trustees foreclosed from urging forfeiture of the leases by reason of the so-called 'doctrine of preclusion of inconsistent positions' because of the position they took in any of the cited cases?The entire record in this case, together with copies of the briefs of the parties in this Court, the letter directive, memoranda on certification, proposed certification with differences and all other papers are transmitted herewith.[25]
 
 
 
 [1]
 Through the Florida Board of Trustees for the Internal Improvement Trust Fund
 
 
 [2]
 In denying the right to drill for limestone despite his holding that the leases were valid and covered minerals, not just oil and gas, the trial judge declared:
 Having determined that Coastal has established its legal right to proceed with its mining operations in Lake Okeechobee I herein set forth the reasons why I decline to enforce this right in the manner which Coastal has requested. The following statement from the Trustees' describes the importance of Lake Okeechobee to the State of Florida: 'South Florida, with its expanding population already zooming into the millions, in a 'water-short' area; that Lake Okeechobee-- a huge but shallow basin with a lime-stone floor-- is the only place in the entire area where fresh water can be stored in sufficient quantities to meet the fluxuating needs of that population, the needs of Florida's unique and priceless Everglades National Park, and the needs of the tremendously valuable central and south Florida agricultural industry; that the fresh water in Lake Okeechobee is presently of high purity and of a quality (if not quantity) to meet the demands made upon it; and finally that the removal of large portions of the limestore floor of the lake will weaken the barrier which separates the pure fresh water in the Lake from impure, saline water lying under pressure beneath the rock, thereby dangerously jeopardizing the fresh water supply of the entire Central and South Florida area.' Evidence was presented as to the possible effect of Coastal's operations on the quality of the water supply emanating from the Lake and as to the weakening of the barrier which prevents saline intrusion . . .. I find this evidence as to the possible effects persuasive. It is by no means absolute but the balancing of interests between Coastal, the Trustees, and the people of the State of Florida lends weight to the prevention of such mining operations by a private company.
 
 
 [3]
 Indeed the suit was precipitated to challenge the Department of the Army's refusal to grant a permit for essentially like reasons which stated:
 'The application of the Coastal Petroleum Company dated 29 August 1968 for a Department of the Army permit to mine limestone from an area of Lake Okeechobee has been given careful consideration at all levels of the Department of the Army.
 Confirming advance information furnished your company by telegram on 12 August 1969, I have to inform you that your application must be, and hereby is, denied.
 This denial is based on the following considerations:
 a. You have been unable to show that you have a legal right to do the work proposed under the permit in view of the action of the Trustees of the Internal Improvement Fund of the State of Florida on 27 May 1969 declaring Drilling Lease No. 248, as modified, to be in default in its entirety and the lease and all the lessee's rights thereunder to be terminated;
 b, Issuance of a permit is unanimously and vigorously opposed by all responsible local, State and Federal agencies, local and State officials and Florida Congressmen, and recognized conservation groups; and
 c. Issuance of the permit would result in substantial harmful effect upon fish and wildlife resources, ecology, conservation, and the water quality of Lake Okeechobee.'
 
 
 [4]
 Louisiana has recently adopted such a certification procedure. United States v. Buras, 5 Cir., 1972, 475 F.2d 1370, 1371 (Brown, C. J., dissenting), cert. denied, 1973, 414 U.S. 865, 94 S.Ct. 129, 38 L.Ed.2d 117
 
 
 [5]
 Allen v. Estate of Carman, 5 Cir., 1971, 446 F.2d 1276, on certification, Fla., 1973, 281 So.2d 317, on receipt of answers to certification, 5 Cir., 1973, 486 F.2d 490; National Education Association, Inc. v. Lee County Board of Public Instruction, 5 Cir., 1971, 448 F.2d 451, on certification, Fla., 1972, 260 So.2d 206, on receipt of answers to certification, 5 Cir., 1972, 467 F.2d 447; Gordon v. The John Deere Company, 5 Cir., 1971, 451 F.2d 234, on certification, Fla., 1972, 264 So.2d 419, on receipt of answers to the certification, 5 Cir., 1972, 466 F.2d 1200; Boyd v. Bowman, 5 Cir., 1971, 443 F.2d 848, on certification, Fla., 1971, 256 So.2d 1. On receipt of answers to certification, 5 Cir., 1972, 455 F.2d 927. Martinez v. Rodriquez, 5 Cir., 1968, 394 F.2d 156, on certification, Fla., 1968, 215 So.2d 305, on receipt of answers to certification, 5 Cir., 1969, 410 F.2d 729; Life Ins. Co. of Va. v. Shifflet, 5 Cir., 1967, 370 F.2d 555, on certification, Fla., 1967, 201 So.2d 715, on receipt of answers to certification, 5 Cir., 1967, 380 F.2d 375; Hopkins v. Lockheed Aircraft Corp., 5 Cir., 1966, 358 F.2d 347, on certification, Fla., 1967, 201 So.2d 743, on receipt of answers to certification, 5 Cir., 1968, 394 F.2d 656; Green v. American Tobacco Co., 5 Cir., 1962, 304 f,.2d 70, on rehearing, 304 F.2d 85, on certification, Fla., 1963, 154 So.2d 169, on receipt of answers to certification, 5 Cir., 1963, 325 F.2d 673, cert. denied, 1964, 377 U.S. 943, 84 S.Ct. 1349, 12 L.Ed,2d 306, on appeal after retrial, 391, F.2d 97, rehearing en banc denied, 1969, 409 F.2d 1166; Clay v. Sun Ins. Office, Ltd., 1960, 363 U.S. 207, 80 S.Ct. 1222, 4 L.Ed.2d 1170, on certification upon remand, Fla., 1961, 133 So.2d 735, on receipt of answers to certification, 5 Cir., 1963, 319 F.2d 505, reversed, 1964, 377 U.S. 179, 84 S.Ct. 1197, 12 S.Ed.2d 229. See W. S. Ranch Co. v. Kaiser Steel Corp., 10 Cir., 1968, 388 F.2d 257, 256 (dissenting opinion), reversed, 391 U.S. 593, 88 S.Ct. 1753, 20 L.Ed.2d 835
 
 
 [6]
 Three separate tracts of land are involved. The leases designate them by number as 224-A, 224-B, and 248
 
 
 [7]
 Coastal contends that the history of the litigation concerning these lands, particularly the Collins decision, supra, is res judicata as to the validity of the leases. The Trustees conuter by asserting that at no time has the issue of invalidity for failure to comply with the requirements of Florida Statutes, 253.55, F.S.A., been before the court
 
 
 [8]
 This letter directive of August 28, 1972 and supplements are a part of the record being certified insofar as the Supreme Court of Florida deems them relevant to an understanding of our choices in the final certificate
 
 
 [9]
 The 'Proposed Joint Certification (with differences delineated)' is a part of the certified record. The points of differences are interspersed at appropriate places in parallel columns. The certificate appended includes only the choice made together with footnotes indicating specifically each choice and the addition of some made by us out of an abundance of caution
 
 
 [10]
 The Trustees 'counter claim' alleged:
 
 
 [3]
 Coastal has failed and refused to comply with the terms of the lease relating to the drilling of wells during each drilling period and Coastal has not, pursuant to the express terms of Drilling Lease 248, as modified, drilled upon lands alleged by Coastal to be included in the said Drilling Lease 248, as modified, a minimum of 12,000 feet of wells during each drilling period to depths for each well of not less than 6,000 feet 'unless oil, gas or sulphur has been found in paying quantities or igneous rock, or paleozoic formation, or formations not susceptible of being drilled with first =class drilling equipment is encountered at a lesser depth.' (App. 47). Coastal responded by a categorical denial (par. III, App. 51) which was expanded in its 'affirmative defense' (App. 52):
 Coastal Petroleum Company has drilled or caused to be drilled all of the footage required under the terms of Lease No. 248, as well as (847) Leases 224-A and 224-B as described and referred to and made a part of Lease No. 248, for footage credit as set forth in Article 20 of Lease No. 248, and all annual delay rentals as provided for in said leases have been duly paid on or before the due dates of the respective leases, including Lease No. 248, from the first due date down to and including the rentals due on Lease No. 248 on December 19, 1968. Exhibit 'B' attached hereto and made a part hereof shows the payment of the rentals and the receipt therefor duly made and entered on November 15, 1968, by the Trustees of the Internal Improvement Fund and the receipt was signed by Robert C. Parker, Director. By reason of the foregoing, the Trustees of the Internal Improvement Fund of the State of Florida are in all things estopped to deny the validity of Lease No. 248, as well as the other leases referred to in 248.
 
 
 [11]
 See, e.g., Trustees brief pp. 8-13 and the responsive tabular drilling history in Coastal's brief, pp. 7-9
 
 
 [12]
 This includes adapting conditional answers to such precise issues presumably for subsequent determination by the Federal Court as prescribed by it
 
 
 [13]
 To retain the Certificate's self-sufficiency the notes are numbered separately from the accompanying (and incorporated) opinion
 
 
 [14]
 Adopting Trustee's Contention Difference No. 1
 
 
 [15]
 Adopting Trustee's Contention Difference No. 2
 
 
 [16]
 Adopting Trustee's Contention Difference No. 3 apparently inadvertently omitted in final draft
 
 
 [17]
 Adopting Trustee's Contention Difference No. 4
 
 
 [18]
 Adopting Trustee's Contention Difference No. 5
 
 
 [19]
 Adopting Trustee's Contention Difference No. 6, apparently inadvertently omitted in final draft
 
 
 [20]
 Adopting Trustee's Contention Difference No. 7, this omission was undoubtedly intentional and while of doubtful relevance in this certificate it has been included by us for compliteness
 
 
 [21]
 Adopting Coastal's Contention Difference No. I. We would add that omission of 1941 statute in Clerk's directive (note 8, supra (opinion) was inadvertent
 
 
 [22]
 Adopting Trustee's Contention Difference No. III
 
 
 [23]
 Adopting Trustee's Contention Difference No. IV
 
 
 [24]
 Adopting Coastal's Contention Difference No. V
 
 
 [25]
 We repeat again what we often have said:
 'The particular phrasing used in the certified question is not to restrict the Supreme Court's consideration of the problems involved and the issues as the Supreme Court perceives them to be in its analysis of the record certified in this case. This latitude extends to the Supreme Court's restatement of the issue or issues and the manner in which the answers are to be given, whether as a comprehensive whole or in subordinate or even contingent parts.' Martinez v. Rodriguez, 394 F.2d 156, 159, n. 6.